## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

DORIS BETTY ADDISON, on behalf of herself
all others similarly situated,

        Plaintiff,

v.

CNX GAS COMPANY, LLC;
COMMONWEALTH COAL CORPORATION;
and JOHN DOES A -Z,

        Defendants.

Case No. _____

**CLASS ACTION COMPLAINT**

**Trial By Jury Requested**

Plaintiff, on behalf of herself and all others similarly situated, states as follows for her

Complaint against the Defendants:

### INTRODUCTION

1.     This case is brought on behalf of certain owners and lessors of gas interests in

Buchanan, Russell and Tazewell Counties, Virginia ("the Class").  Plaintiff and the Class

Members are the owners of gas estates/interests in tracts that are included in coalbed methane gas

drilling units operated by CNX Gas Company, LLC; have each entered into one or more gas leases

under which they leased their respective gas interests to CNX; and are entitled to receive from CNX

royalty payments on gas, including coal bed methane, produced by CNX, their lessee.[1]  Plaintiff and

the Class Members have been identified by CNX in filings with the Virginia Gas and Oil Board

("Board") as having claims to the ownership of coalbed methane gas ("CBM") that conflict with the

CBM ownership claims that ostensibly arise from coal ownership in the tracts.

---

[1]  As used herein, "CNX" means CNX Gas Company, LLC and its predecessors and predecessors-in-interest, including Pocahontas Gas Partnership.

2.      The Coal Owner Defendants listed in paragraphs 11-12, below, are the owners of purported CBM claims that arise from coal ownership in tracts that are included in CBM drilling units operated by CNX.  Those entities or their predecessors in interest were identified by CNX in filings with the Board as having claims to the ownership of CBM that conflict with the claims of the owners of the gas estates/interests in the tracts, including Plaintiff and the Class Members.

3.      For years, CNX, as the operator of CBM wells/units located in the Subject Virginia Counties, has produced and sold substantial quantities of CBM that are attributable to Plaintiff's and the Class Members' gas ownership interests, but CNX has never made royalty payments to Plaintiff and the Class Members nor otherwise properly accounted for same.

4.      CNX has deprived Plaintiff and the Class Members of their royalty payments by taking undue and/or unlawful advantage of certain provisions of the Virginia Gas and Oil Act, VA. CODE ANN. § 45.1-361-1, *et seq*. ("the Gas Act"), that permit the production and sale of CBM in the face of "conflicting claims" of CBM ownership.  CNX repeatedly asserted that there were conflicting CBM ownership claims as between gas interest owners (the Class) on the one hand, and coal interest owners (the Coal Owner Defendants) on the other hand.  CNX instituted proceedings before the Board that resulted in the entry of orders that pooled all interests or estates in CBM drilling units and appointed CNX as operator of the CBM units. CNX thereupon proceeded to produce and sell CBM attributable to Plaintiff's and the Class Members' interests, but, because of CNX's assertions of "conflicting claims," CNX was obligated, under §45.1-361.22 of the Gas Act, to place the royalty payments owed to Plaintiff and the Class Members under their leases into escrow, pending judicial resolution of the "conflicting claims" of CBM ownership.  Such monies have never been paid to Plaintiff and the Class Members.

5.      CNX deprived Plaintiff and the Class Members of royalty payments owed to them under their leases by claiming that the Coal Owner Defendants own the CBM as a result of interests that arise from coal ownership.

6.      CNX's claims and course of conduct are unfounded and contrary to the law.  The Virginia Supreme Court held six years ago that CBM "is a distinct mineral estate" from coal, and that landowners retain the rights to CBM located on their property when they convey or lease coal rights.  *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 238, 267 Va. 549, 556 (2004).  A new state law codifies th*e Ratliff* rule.  VA. CODE ANN. § 45.1-361.21:1:  "A conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas."  Therefore, controlling statutory and common law in Virginia holds that Plaintiff and the Class Members own the CBM that is produced from the lands in which they own gas interests, and that the Coal Owner Defendants do not own the CBM.

7.      Plaintiff's and the Class Members' royalty payments are in (or are supposed to be in) an escrow account established by the Board.  Under VA. CODE ANN. §45.1-361.22(5)(a), Plaintiff and the Class Members will be entitled to receive the royalty payments from escrow upon the entry of a "final decision of a court of competent jurisdiction adjudicating the ownership of coalbed methane gas as between [the conflicting claimants]."  Plaintiff respectfully requests that this Court make that ownership determination.  The ownership determination would have substantial benefits to Plaintiff and the Class Members, including entitling them to finally receive the many years' worth of their money that has been held in escrow or retained by CNX as a result of ownership conflicts that do not exist.

8.      On behalf of the Class, Plaintiff seeks a judgment to establish – among other things – that:

     a.      Plaintiff and the Class Members -- not Defendants -- are the owners of the CBM that is attributable/allocated to those CBM Unit tracts as to which CNX has asserted there are conflicting claims of CBM ownership between Plaintiff and Class Members (as gas interest owners) on the one hand, and the Coal Owner Defendants (as coal interest owners) on the other hand;

     b.      All royalty payments attributable to Plaintiff's and the Class Members' CBM interests must be released from escrow to Plaintiff and the Class Members; and

     c.      CNX must fully account for the methodology it used to calculate the royalty payments, must prove that it sold the CBM at the highest price obtainable and otherwise calculated the royalty payments properly, and must pay over to Plaintiff and the Class Members any royalty payments CNX calculated improperly or failed to deposit into escrow.

## PARTIES

### Plaintiff

9.     Plaintiff, Doris Betty Addison, is an adult resident citizen of the State of Maryland.  Plaintiff is the owner of certain lands and gas interests, including CBM, in Buchanan County, Virginia. Plaintiff, as lessor, has leased such gas interests to CNX, as lessee, pursuant to an "Oil, Gas and Coalseam Gas Lease" dated May 2, 1997 (appearing at Book 463, Pages 662-82 in the land records of Buchanan County, Virginia).

### CNX

10.     Defendant CNX Gas Company, LLC is a limited liability company organized under the laws of the Commonwealth of Virginia and has its principal office at 1800 Washington Road, Pittsburgh, Pennsylvania 15241-1421.  The sole member of CNX Gas Company, LLC, is CNX Gas Corporation.  CNX Gas Corporation is an out-of-state corporation organized under the laws of the State of Delaware and has its principal office at 1000 Consol Energy Drive, Canonsburg, Pennsylvania.   For the purposes of subject matter jurisdiction under 28 U.S.C.

§1332(a), the citizenship of CNX Gas Company, LLC is the citizenship of its sole member, CNX

Gas Corporation; therefore, for the purposes of 28 U.S.C. §1332(a), CNX Gas Company, LLC is a

citizen of either Delaware (where CNX Gas Corporation was incorporated) or of Pennsylvania

(where CNX Gas Corporation has its principal place of business).  Alternatively, for the purposes of

subject matter jurisdiction under 28 U.S.C. §1332(d), CNX is a citizen of Virginia, under whose

laws it was organized and where it has its principal place of business.

### Coal Owner Defendants

11.     Defendant Commonwealth Coal Corporation ("Commonwealth Coal") is an out-

of-state company organized under the laws of the Commonwealth of Virginia and has its

principal office at 411 Libbie Avenue, Suite 4, Richmond, Virginia.  Commonwealth Coal is the

entity identified by CNX in its filings with the Board as the coal estate owner that (allegedly) has

"conflicting claims" with Plaintiff in respect to the ownership of CBM produced from certain

CBM units operated by CNX.

12.     The "John Does A-Z" defendants are the persons and entities who have been

identified (or whose predecessor(s) in interest were identified) by CNX in its filings with the

Board as coal estate/coal interest owners that (allegedly) have "conflicting claims" with absent

Class Member gas owners in respect to the ownership of CBM produced from CBM Units

operated by CNX; provided, however, that the John Doe defendants exclude any person or entity

that is a citizen of the State of Maryland.  The complete identity of the John Doe defendants is

currently unknown by Plaintiff, but the identity of those defendants is known by CNX, and

Plaintiff will name them as specific parties defendant upon Plaintiff's receipt of the necessary

information from CNX.

## JURISDICTION

13.     Plaintiff, individually and on behalf of the Class, seeks the issuance of a declaratory judgment pursuant to 28 U.S.C. § 2201(a). Plaintiff, individually and on behalf of the Class, also seeks injunctive relief and/or damages as a result of the matters described hereinafter.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the named plaintiff, on the one hand, and the defendants, on the other hand, are citizens of different States, and as between the named parties, the amount in controversy exceeds $75,000, exclusive of interest and costs. The amount in controversy includes the amount of Plaintiff's escrowed (past) royalty payments, the amount of future royalty payments Plaintiff will be entitled to receive as a result of the declaratory and/or injunctive relief requested herein, the amount of damages Plaintiff has suffered due to CNX's royalty underpayments, the costs to CNX of providing a proper accounting of its royalty payments,  the costs associated with CNX's modification of its revenue accounting system to ensure the proper payment of royalties in the future, and Plaintiff's claims for punitive damages and attorney's fees.  Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and because one or more members of the Class are citizens of a State different from, *inter alia*, Defendant CNX Gas Company, LLC.  This Court has supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. §1367.

15.     This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants conduct business in the Commonwealth of Virginia, including, *inter alia*, producing gas in the Commonwealth of Virginia, and entering into agreements for the sale of property and property rights located in the Commonwealth of Virginia.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the acts and transactions complained of herein occurred in this District, and pursuant to 28 U.S.C. §1391(a)(3) because Defendants are subject to personal jurisdiction at the time this action is commenced.

## DEFINITIONS

17.     The following definitions apply to this Complaint:

a.      "Board" means the Virginia Gas and Oil Board.

b.      "CBM" means coalbed methane gas.

c.      "CBM Unit" is a CBM drilling unit operated by CNX and established by a pooling order issued by the Board.

d.      "CNX" means CNX Gas Company, LLC, and its predecessors and predecessors-in-interest, including Pocahontas Gas Partnership.

e.      "Coal Owner Defendants" means Commonwealth Coal and the "John Does A-Z" defendants.

f.      "Including" means "including, without limitation."

g.      "Leases" means all gas leases under which Plaintiff or any Class Member, as the lessor/royalty owner, and CNX, as the lessee/working interest owner, have both owned interests in respect to CBM wells located in any of the Subject Virginia Counties.  The term "Leases" does not include any "lease" which has been "deemed" to be in effect under VA. CODE ANN. §45.1-361.22(6).

h.      "Subject Virginia Counties" means Buchanan, Russell and Tazewell Counties, Virginia, and all other Virginia Counties in which CNX operates (or has operated) CBM well/units.

## FACTUAL ALLEGATIONS

### Background

18.     This case concerns the ownership of CBM produced by CNX from certain CBM Units located in the Subject Virginia Counties.

19.     Various persons and entities, including the Coal Owner Defendants or their predecessors in interest, hold the right to extract coal through coal mining operations in the Subject Virginia Counties.  The coal owners mine and produce coal -- or hold the right to mine and produce coal -- based upon their ownership of the coal and/or their leasehold rights to the coal.

20.     CBM is a natural gas that resides in coal seams. Coal companies have historically ventilated or otherwise removed CBM from their coal mines as a safety measure, and discharged the CBM into the atmosphere.  However, during the 1970's, technological advances made the commercial production and sale of CBM feasible, and CBM wells began to be drilled.

21.     In 1990, the Virginia General Assembly enacted the Virginia Gas and Oil Act, VA. CODE ANN. §§ 45.1 - 361.1, *et seq*. (the "Gas Act").  When the Gas Act was enacted, there was uncertainty in Virginia about the legal question of whether CBM was owned by the owners of the gas estate/gas interests (e.g., landowners) or by coal estate/coal interest owners (e.g., coal companies).  The Gas Act facilitated the drilling and production of CBM, without waiting for the CBM ownership issue to be judicially decided, by making it relatively easy for a company to force-pool and drill for CBM in a given area (a "unit").  The Gas Act required the operator of the drilled well to place all proceeds from the sale of CBM (less reasonable costs of production) attributable to "conflicting" CBM ownership interests into escrow until "a final decision of a court of competent jurisdiction adjudicating the ownership of coalbed methane gas as between [the conflicting claimants]." *See* VA. CODE ANN. §45.1-361.22(4) and (5).

22.     CNX began producing and selling CBM from the Subject Virginia Counties in the 1990's.  CNX's CBM operations are extensive.  At the close of 2009, CNX operated approximately 3,200 CBM wells in the Subject Virginia Counties, resulting in the production of approximately 78,000,000 Mcf of CBM that was marketed and sold by CNX in 2009.

23.     The CBM Units operated by CNX were established by pooling orders issued by the  Board under §45.1-361.22 of the Gas Act.  Each pooling order describes a defined area of surface acreage; designates that area as a drilling unit ("CBM Unit") on which a well can be located, drilled and operated for the recovery of CBM; "pools" all of the gas estates/interests in the CBM Unit; and appoints CNX as the operator of the CBM Unit.

24.     In most (if not all) instances, a CBM Unit is comprised of two or more separately owned tracts.  Under the Gas Act and the Board's pooling orders, the CBM produced by CNX from a CBM Unit is allocated among the separate tracts on a proportionate acreage basis, *i.e.*, the portion of CBM production allocated to a tract is in the same proportion which the tract's acreage bears to the total acreage in the CBM Unit. (For example, if a CBM Unit is 100 acres and is comprised of one tract (Tract 1) containing 60 acres, another tract (Tract 2) containing 30 acres, and another tract (Tract 3) containing 10 acres, then the CBM produced from the CBM Unit's well(s) would be allocated among the tracts as follows: Tract 1 – 60%; Tract 2 – 30%; and Tract 3 – 10%.)  The CBM production allocated to a particular tract is shared among the tract's gas owners on a proportionate ownership basis.

25.     Plaintiff and the Class Members are the owners of gas estates/interests in tracts that are included in CBM drilling units operated by CNX. Plaintiff and the Class Members have entered into one or more Leases under which they leased their respective gas interests to CNX and

are entitled to receive from CNX royalty payments on gas, including CBM, produced by CNX, their lessee.

26.     Coalbed methane gas, CBM, is defined by the Gas Act as "occluded natural gas produced from coalbeds and rock strata associated therewith."  VA. CODE ANN. §45.1-361.1.   As noted above, when the Gas Act was passed there was some uncertainty in Virginia about whether CBM allocated to a CBM Unit tract was owned by (a) the persons and entities owning the gas estate/gas interests in that tract ("gas owners"), or (b) the persons and entities owning the coal estate/coal interests in that tract ("coal owners").  The Virginia Supreme Court addressed and answered the question on March 5, 2004.  *Harrison-Wyatt v. Ratliff*, 593 S.E.2d 234 (Va. 2004) (title to CBM does not pass to coal owner along with the coal).

27.     Beginning in the 1990's, when making an application to the Board for a CBM Unit to be established, CNX -- as the proposed operator -- undertook to (and was obligated under §45.1-361.22 of the Gas Act to) identify those tracts in which there were conflicting claims to the ownership of CBM, and to provide lists/schedules that identified the conflicting claimants/potential owners.

28.     When it submitted its CBM Unit applications and made subsequent filings as the Board-appointed CBM Unit operator, CNX consistently advised and represented to the Board that conflicting claims to the ownership of CBM existed for each of those tracts in which one person or entity owned the gas estate/gas interests ("gas owner") and a different person or entity owned the coal estate/coal interests ("coal owner").  The conflicting claim allegedly arose from the question of whether the CBM allocable to that tract was owned by the gas owner(s) or by the coal owner(s).

29.     CNX provided the Board with lists/schedules that identified the "conflicting claimants," including the name of each gas owner and the name of each coal owner. The pooling orders issued by the Board for CNX-operated CBM Units consistently adopted (apparently "rubber-stamped") CNX's assertions of "conflicting claims" of CBM ownership.

30.     CNX undertook, as the operator of the CBM Units, to produce CBM from the CBM Units; and CNX undertook, as the operator and/or as a participating working interest owner, to take possession of and sell the CBM it produced from the CBM Units.  The CBM sales proceeds attributable to "conflicting interests," including royalty payments owed by CNX to Plaintiff and the Class Members under their Leases, were (or were supposed to have been, but have not been) deposited by CNX into a Board-established escrow account per the provisions of VA. CODE ANN. §45.1-361.22(4).

31.     To release the escrowed monies, §45.1-361.22(5) of the Gas Act provides that "[t]he Board shall order payment of principal and accrued interest, less escrow account fees, from the escrow account to conflicting claimants only after (i) a final decision of a court of competent jurisdiction adjudicating the ownership of coalbed methane gas as between them or (ii) an agreement among all claimants owning conflicting estates in the tract in question or any undivided interest therein."

**Determination of Ownership**

32.     Plaintiff and the Class Members are the persons and entities who have been identified by CNX in its CBM Unit applications and other Board filings as those owners of the gas estates/gas interests in a CBM Unit tract who have leased their interests, but whose ownership of the CBM allocated to that tract has been further identified by CNX as being in conflict with the persons and entities who own CBM claims that arise from coal ownership in the

tract.  The Coal Owner Defendants are the persons and entities who have been identified (or whose predecessor(s) in interest were identified) by CNX in its CBM Unit applications and other Board filings as the owners of the coal estates/interests in the relevant CBM Unit tracts, but whose coal ownership ostensibly -- according to CNX -- gives them an ownership claim to the CBM in those tracts that caused a conflict between them and Plaintiff and the Class Members, who own the gas estates/interests in the tracts. The royalty payments owed by CNX to Plaintiff and the Class Members have never been released from escrow or otherwise paid over to Plaintiff and the Class Members.

33.     Through this action, Plaintiff requests, on behalf of herself and the Class, that the Court enter a judgment declaring, as between the "conflicting claimants" identified by CNX, that as a matter of law the CBM allocated to the subject CBM Unit tracts is owned by Plaintiff and the Class Members (the gas interest owners) and is not owned by the Coal Owner Defendants (the coal interest owners).  Such a determination is a straightforward legal issue, given the Virginia Supreme Court's decision in *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 238, 267 Va. 549, 556 (2004) (coalbed methane gas "is a distinct mineral estate" from coal, and landowners (gas owners) retain the rights to CBM when they convey or lease coal rights), and the very recent addition of §45.1-361.21:1 to the Gas Act which provides that: "A conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas."

34.     The Board does not (as CNX and the Board agree) have the authority to make an adjudication of the ownership of CBM as between "conflicting claimants."  *See* VA. CODE ANN. §45.1-361.22(5).

35.     Plaintiff respectfully asks this Court to apply *Ratliff* and §45.1-361.21:1 and make an adjudication of CBM ownership in favor of Plaintiff and the Class Members and against the Coal Owner Defendants.

36.     Plaintiff further requests that this Court enter a judgment declaring that Plaintiff and the Class Members are, as to the past production of CBM by CNX, entitled to receive from the Board's escrow account and/or from CNX directly, all royalty payments attributable to their interests; and the Court should direct CNX and/or the Coal Owner Defendants to instruct and otherwise authorize the Board to release such royalty payments from escrow, plus all interest accrued (or which could or should have accrued) thereon, and pay such monies over to Plaintiff and the Class Members.   In addition, Plaintiff requests that this Court enter a judgment declaring that Plaintiff and the Class Members are, as to future production, entitled to receive royalty payments directly from CNX in accordance with their Leases and that CNX shall not deposit any such royalty payments into the Board's escrow account.

### CNX's Escrow Account Obligations

37.     CNX took possession of and sold the CBM Unit production attributable to the leasehold interests it obtained from the Class Members under the Leases.

38.     To the extent CNX has deposited into the Board's escrow account royalty payments attributable to Plaintiff's and the Class Members' interests under the Leases, Plaintiff and the Class Members are entitled, as set forth in paragraph 36, above, to receive a judgment from the Court directing CNX to instruct and otherwise authorize the Board to release such escrowed royalty payments to Plaintiff and the Class Members, including all escrow account interest accrued thereon.

39.     To the extent, however, that CNX failed to properly pay such royalty payments into escrow (which Plaintiff alleges is likely), CNX should be required, via the entry of a judgment, to pay to Plaintiff and the Class Members an amount of money equal to the total amount of royalty payments CNX should have deposited, but failed to deposit, plus prejudgment and equitable interest thereon, and plus the value of any monetary or other economic advantages, profits, and benefits, including attendant tax credits, that CNX realized through its receipt, retention and use of said royalty payments.

40.     Plaintiff alleges that there are certain instances in which CNX has wholly failed to deposit Plaintiff's and the Class Members' royalty payments into escrow and has, instead, retained such royalty payments for its own use and benefit.  Further, Plaintiff alleges that there are certain instances where the Lease royalties deposited by CNX into escrow were calculated improperly and were insufficient.  For example, in marketing the CBM it produced, CNX was obligated, by virtue of its undertakings and/or as the CBM Unit operator, to act as a reasonably prudent operator and to market and sell the CBM at the highest price obtainable.  However, in calculating and depositing into escrow its Lease royalty payments, CNX has, upon information and belief, improperly used gas prices that were less than the highest price obtainable, including prices from the sale of gas by CNX to affiliates on a non-arm's-length basis.  Further, in calculating and depositing into escrow its Lease royalty payments, CNX has not paid royalties on all of the volumes of CBM it produced, and CNX has deducted post-wellhead costs that were improper and/or excessive, including costs in excess of actual, direct, and/or reasonable costs and including costs that, at times, exceeded the sales price of the CBM.

41.     CNX's deductions of improper and excessive post-wellhead costs were intentional, willful, and wanton and in utter disregard of the rights of Plaintiff and the Class

Members.  For example, in November of 1999, a federal jury returned a verdict against CNX in *Levisa Coal Co., et al., v. Consolidated Coal Co., et al*., Civil Action No. 1:97-cv-00117 on the docket of the United States District Court for the Western District of Virginia, Abingdon Division.  *Levisa Coal* concerned the costs deducted by CNX in calculating and paying gas lease royalty payments to the *Levisa Coal* plaintiffs on gas produced by CNX in Virginia.  The jury's awarded damages in excess of $10 million to the *Levisa Coal* plaintiffs for deductions taken by CNX in excess of reasonable actual costs of gathering, compression and transportation.  The jury verdict was upheld on appeal to the United States Court of Appeals for the Fourth Circuit.  CNX thereafter changed its royalty calculation methodology for the *Levisa Coal* plaintiffs and, consistent with the jury's findings, reduced the costs it had been charging to the *Levisa Coal* plaintiffs.  Nevertheless, in calculating and depositing into escrow Plaintiff's and the Class Members' royalty payments, CNX has deducted and intentionally continued to deduct costs that were found by the federal jury in *Levisa Coal* to be improper and excessive.

42.     Plaintiff and the Class Members demand and are entitled to receive a full and accurate disclosure and an accounting of all such matters from which the full extent of CNX's wrongful acts and omissions and Plaintiff's and the Class Members' resulting damages may be revealed.

43.     The full extent of CNX's acts and omissions in regard to its payments (or non-payments) of Lease royalties is not currently known, and can only be determined adequately through an accounting and investigation of CNX's books, records, and practices, including, without limitation, disclosure of detailed information relating to the handling and marketing of CBM produced by CNX and all other matters relating to CNX's calculation and payment (or nonpayment) of Lease royalty payments into escrow.

44.     Plaintiff and the Class Members are entitled to recover from CNX all amounts that are shown to be owed by CNX as the result of such accounting, including prejudgment and equitable interest thereon at the maximum lawful rate.

## PUNITIVE DAMAGES

45.     The acts and omissions of CNX as set forth hereinabove were willful and wanton and in utter disregard of the rights of Plaintiff and the Class Members, or were done with reckless disregard for their rights, thus entitling Plaintiff and the Class Members to punitive damages against CNX in an amount to be determined by the jury.

## SPECIAL MASTER

46.     Plaintiff requests that the Court consider the appointment of a master under Rule 53, FED. R. CIV. P., to assist the Court in the resolution of the accounting issues due to be resolved through this action, with all such costs for same, including the master's compensation, to be paid by CNX.

## CLASS ACTION ALLEGATIONS

47.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and the Class, defined as follows:

> Each person and entity who has been identified by CNX as the owner and lessor of the gas estate or gas interests in a tract included in a coalbed methane gas unit operated by CNX in any of the Subject Virginia Counties, and whose ownership of the coalbed methane gas attributable to that tract has been further identified by CNX as being in conflict with a person(s) or entity(ies) owning the coal estate or coal interests in the tract, according to filings made by CNX with the Virginia Gas and Oil Board and/or according to orders entered by the Virginia Gas and Oil Board pursuant to CNX's filings. The Class excludes (a) the Defendants, and (b) any person who serves as a judge in this civil action and his/her spouse.

48.     Plaintiff reserves the right to redefine the Class and/or establish subclasses as may be appropriate.

49.     The members of the Class are so numerous that joinder of all members is impractical.  Disposition of the claims in this action will provide substantial benefits to both the parties and the Court.

50.     Although the precise number and identity of the Class Members can be ascertained from the books and records of Defendants, Plaintiff alleges, upon information and belief, that the Class exceeds 100 members.

51.     There are questions of law and/or fact common to the Class that predominate over any questions that affect only individual Class Members.  These questions include, but are not limited to, the following:

a.     Whether as a matter of law Plaintiff and the Class Members own the CBM that is attributable to the CBM Unit tracts in which they own gas estates/gas interests;

b.     Whether as a matter of law a conveyance, reservation, or exception of coal does not include CBM;

c.     Whether CNX has failed to account and/or properly account to Plaintiff and the Class Members for royalties owed to Plaintiff and the Class Members under the Leases;

d.     Whether CNX's accounting methodology for the production of CBM from the Subject Virginia Counties, including its calculation of production proceeds attributable thereto and CNX's payment, underpayment and/or non-payment of Lease royalties into escrow, was the same for all Class Members;

e.     Whether CNX used the same methodology and underlying records to calculate all Class Members' escrow account royalty payments;

f.      Whether CNX used for all Class Members the same gas prices (per MCF and/or per MMBtu) to calculate their escrow account royalty payments on CBM produced by CNX, and the transactions upon which those gas prices were based;

g.      Whether the gas prices used by CNX to calculate royalty payments for Plaintiff and the Class Members under the Leases were less than the best gas prices obtainable for such CBM;

h.      Whether costs were deducted and what kinds of costs were deducted by CNX in calculating royalty payments for Plaintiff and the Class Members under the Leases;

i.      Whether the costs deducted by CNX in calculating royalty payments for Plaintiff and the Class Members under the Leases were improper and/or excessive;

j.      Whether CNX has converted Plaintiff's and the Class Members' Lease royalties by, *inter alia*, retaining such royalties for its own use and benefit;

k.      Whether CNX has violated its duty to properly account to Plaintiff and the Class Members on CBM produced in the Subject Virginia Counties as a result of the acts and omissions described herein; and

l.      Whether punitive damages can and should be imposed on CNX by virtue of CNX's wrongful acts and omissions.

52.      CNX has acted on grounds that apply generally to Plaintiff and all Class Members, so that declaratory and injunctive relief is necessary and appropriate for the Class as a whole, consistent with Rule 23(b)(2) of the Federal Rules of Civil Procedure.

53.      The critical remedy that Plaintiff seeks -- a final legal determination of CBM ownership -- is primarily declaratory and injunctive. The monetary relief that Plaintiff seeks is secondary to, and flows from, the declaratory/injunctive request.

54. The common pattern of conduct by Defendants (along with the common theories for redressing the misconduct) supports the maintenance of this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

55. Plaintiff and the Class Members share a well-defined community of interest; many common questions of law and fact are common to Plaintiff and all Class Members.

56. Plaintiff's claims are typical of the claims of the Class, and Plaintiff has the same interests as the other members of the Class.

57. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

58. Plaintiff is committed to prosecuting this action and has retained experienced and competent counsel.  Plaintiff's counsel are experienced in class actions, including actions that involve breaches of oil and gas leases, and underpayments of gas royalties.  Neither Plaintiff nor Plaintiff's counsel have any interests that might cause them not to vigorously pursue this action.

59. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, many members of the Class will find the litigation costs regarding their claims so prohibitive that they effectively would be unable to seek any redress at law.  Because of the size of the individual Class Members' claims, many could not afford to seek legal redress or the relief requested for the wrongs set forth herein.  Absent a class action, Defendants  will continue the improper and wrongful conduct herein described, the Class Members will continue to be damaged by Defendants' wrongful conduct, and Defendants' violations of the law will continue without remedy.

## COUNT I

## DECLARATORY JUDGMENT

60.     Plaintiff restates and incorporates herein by reference all of the allegations

contained in the above numbered paragraphs.

61.     Plaintiff requests that the Court issue a judgment pursuant to 28 U.S.C. §2201,

and declare that:

> a.     Plaintiff and the Class Members -- not Defendants -- are the owners of the CBM that is attributable/allocated to those CBM Unit tracts as to which CNX has asserted there are conflicting claims of CBM ownership between Plaintiff and Class Members (as gas interest owners) on the one hand, and the Coal Owner Defendants (as coal interest owners) on the other hand;

> b.     All royalty payments attributable to Plaintiff's and the Class Members' CBM interests must be released from escrow to Plaintiff and the Class Members; and

> c.     CNX must fully account for the methodology it used to calculate the royalty payments, must prove that it sold the CBM at the highest price obtainable and otherwise calculated the royalty payments properly, and must pay over to Plaintiff and the Class Members any royalty payments CNX calculated improperly or failed to deposit into escrow.

## COUNT II

## BREACH OF CONTRACT

62.     Plaintiff restates and incorporates herein by reference all of the allegations

contained in the above-numbered paragraphs.

63.     The above-described conduct constitutes violations and breaches of the

obligations, expressed and/or implied, which CNX owes to Plaintiff and the Class Members

under their Leases.

64.     Plaintiff and the Class Members have been damaged as a result thereof and are entitled to recover their actual damages from CNX, punitive damages, statutory or other interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

## COUNT III

## CONVERSION

65.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

66.     CNX, as the Board-appointed operator of the CBM Units, had the lawful authority to produce the CBM that was attributable to Plaintiff's and the Class Members' interests. However, once the CBM was produced, CNX was obligated to properly sell the CBM and remit Lease royalties for same to Plaintiff and the Class Members. CNX failed to do this, and instead took wrongful possession of and retained Lease royalties for its own account, use, and benefit.

67.     CNX's conduct constitutes an unlawful conversion of the royalties that are attributable to the Plaintiff's and Class Members' interests under the Leases. Plaintiff and the Class Members are entitled to receive from CNX an amount of money equal to the Lease royalties converted by CNX.

68.     Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT IV

## NEGLIGENCE: VOLUNTARY UNDERTAKING

69.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

70.     CNX voluntarily undertook to submit applications to the Board for the creation of CBM Units and thereby also voluntarily undertook the tasks of identifying the persons and entities owning an interest in the proposed units and identifying any conflicting CBM ownership claims therein. CNX recognized, or should have recognized, that the proper identification of owners and ownership interests was necessary for the protection of those persons and entities actually owning interests in the CBM that was going to be produced from the CBM Unit. As a matter of law, CNX's undertaking imposed upon CNX a duty to exercise reasonable care in the discharge of its undertaking.

71.     On March 5, 2004, the Virginia Supreme Court issued its ruling in *Ratliff* and thereby established that, as between the owner of the gas estate/gas interests on the one hand, and the owner of the coal estate/coal interests on the other hand, CBM is owned by the owner of the gas estate/gas interests. After March 5, 2004, and notwithstanding the Supreme Court's decision in *Ratliff*, CNX continued to make applications to the Board for the establishment of CBM Units and in connection therewith failed to exercise reasonable care with regard to its identification of the persons and entities owning interests in the CBM.

72.     Among other things, CNX improperly ignored the holding of *Ratliff*; improperly asserted that conflicting CBM ownership claims existed between gas owners and coal owners; improperly procured the Board's entry of pooling orders which adopted (false) assertions of conflicting CBM ownership claims as between gas owners and coal owners; and improperly caused payments owed to the true CBM owners -- the gas owners -- to be subjected to escrow, thereby depriving Plaintiff and the Class Members of the Lease royalties to which they were entitled. Further, after the Virginia Supreme Court's March 5, 2004, opinion in *Ratliff*, CNX, as the operator of CBM Units established prior to March 5, 2004, should have filed, but failed to

file, supplemental and corrected ownership schedules with the Board in regard to those CBM Units that had been established prior to March 5, 2004.  CNX should have withdrawn its prior ownership schedules in which gas owners and coal owners had been categorized incorrectly as "conflicting claimants," and should have submitted amended schedules reflecting, consistent with *Ratliff*, that the gas owners --not the coal owners -- were the true CBM owners. CNX could and should have thereby caused Lease royalties attributable to past production to be released to the gas owners, including Plaintiff and the Class Members, and/or caused Lease royalties attributable to future production to be paid to the gas owners, including Plaintiff and the Class Members, instead of being placed into escrow.

73.    Such acts and omissions constitute a failure by CNX to exercise reasonable care in the performance of its undertaking, and constitute actionable negligence. Further, CNX's acts and omissions in this regard constitute gross negligence and willful, wanton misconduct.

74.    Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT V

## NEGLIGENCE: DUTIES AS UNIT OPERATOR

75.    Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

76.    CNX owed Plaintiff and the Class Members certain obligations resulting from duties that are implied and imposed by law on the operators of force-pooled units, including the duty to act as a reasonably prudent operator and the duty to market.

77.     The above-described conduct by CNX constitutes violations and breaches of CNX's duty to act as a reasonably prudent operator and CNX's duty to market.

78.     Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT VI

## BREACH OF FIDUCIARY DUTIES

79.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

80.     Fiduciary duties and responsibilities were owed by CNX to Plaintiff and the Class Members by virtue of (a) CNX's status as the lessor under the Leases and/or as the Board-appointed operator of CBM Units created through compulsory/forced pooling; (b) CNX's control over and handling, as unit operator, of CBM production and sales proceeds for the benefit of persons owning interests in the CBM Units operated by CNX, including Plaintiff and the Class Members; and/or (c) CNX's undertakings to act as agent and/or joint venturer for, or for the benefit of, other interest owners in the CBM Units operated by CNX, including Plaintiff and the Class Members, in regard to the production, marketing and sale of CBM produced from the CBM Units and in regard to the accounting and revenue distribution functions related thereto. By virtue of such fiduciary duties and responsibilities, CNX had an affirmative duty to correctly identify the interest owners in the CBM Unit; calculate and pay the true and correct amount of monies due to the interest owners, including Plaintiff and the Class Members; account for all of the CBM produced and sold by CNX; and fully and accurately report and disclose all material information relating to CNX's calculation of its payments.

81.     CNX's acts and omissions as above-described constitute violations and breaches of the fiduciary duties owed by CNX to Plaintiff and the Class Members.

82.     Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

**COUNT VII**

**UNJUST ENRICHMENT**

83.     Plaintiff restates and incorporates herein by reference all the allegations contained in the above-numbered paragraphs.

84.     Benefits attributable to Plaintiff's and the Class Members' CBM ownership interests, including CBM production volumes, sales proceeds, attendant tax credits, Lease and/or other benefits, were conferred on CNX by Plaintiff and the Class Members. CNX knew of such benefits and should reasonably have expected to pay Plaintiff and the Class Members for same. CNX accepted and retained such benefits without paying Plaintiff and the Class Members for the value of the benefits, and accepted and retained such benefits under circumstances that render it inequitable for CNX to retain the benefits without paying Plaintiff and the Class Members for the value of same.

85.     Plaintiff and the Class Members are entitled to recover the value of the benefits attributable to Plaintiff's and the Class Members' ownership interests that were accepted and retained improperly by CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands as follows on behalf of herself and the

Class:

1.      That a class be certified by the Court as soon as practicable, and that this action

proceed as a class action with Plaintiff serving as Class Representative for the Class and with

counsel for Plaintiff serving as Class Counsel;

2.      That the Court enter a judgment declaring the respective rights and obligations of

the parties as described and requested above;

3.      That the Court award injunctive relief requiring CNX to properly account to

Plaintiff and the Class Members as described and requested above;

4.      That Plaintiff and the members of the Class recover full compensatory damages

from Defendants in respect to the claims asserted against them, respectively, and that CNX

disgorge and pay over to Plaintiff and the members of the Class all of CNX's ill-gotten gains as

described and requested above;

5.      That Plaintiff and the members of the Class recover punitive damages against

CNX as determined by a jury;

6.      That Plaintiff and the Class Members recover pre-judgment, post-judgment, and

equitable interest on all amounts awarded hereunder;

7.      That Plaintiff and the Class Members recover reasonable attorneys' fees and costs

of this action;

8.      That this Honorable Court grant Plaintiff and the Class Members all additional

relief as may be just and proper and to which the Plaintiff and the members of the Class may be

entitled; and

9.     That Plaintiff and the Class Members be given a trial by jury.

Respectfully submitted,

Dated:  November 9, 2010                                    DORIS BETTY ADDISON

By:     /s/ Peter G. Glubiak                    .
Peter G. Glubiak (VSB 31271)
GLUBIAK LAW OFFICE
11165 West River Road
P.O. Box 144
Aylett, VA  23009
Telephone:  (804) 769-1616
Facsimile:  (804) 769-1897
glubiaklaw@aol.com

Jackson S. White, Jr. (VSB 03677)
The White Law Office
P. O. Box 286
185 Valley St NE
Abingdon, VA 24212
Telephone: (276) 619-3831
Facsimile: (866) 516-5655
jackwhite@whitelawoffice.com

Larry D. Moffett (*pro hac vice* to be submitted)
DANIEL COKER HORTON & BELL, P.A.
265 North Lamar Blvd., Suite R
P. O. Box 1396
Oxford, MS 38655
Telephone: (662) 232-8979
Facsimile:  (662) 232-8940
lmoffett@danielcoker.com

Don Barrett (*pro hac vice* to be submitted)
Brian Herrington (*pro hac vice* to be submitted)
Katherine B. Riley (*pro hac vice* to be submitted)
David M. McMullan, Jr. (*pro hac vice* to be submitted)
BARRETT LAW GROUP, P.A.
404 Court Square North
P.O. Drawer 927
Lexington, MS  39095
Telephone:  (662) 834-2488
Facsimile:  (662) 834-2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
kbriley@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

David S. Stellings (*pro hac vice* to be submitted)
Steven E. Fineman (*pro hac vice* to be submitted)
Daniel Seltz (*pro hac vice* to be submitted)
Jennifer Gross (*pro hac vice* to be submitted)
LIEFF, CABRASER, HEIMANN
  & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
dstellings@lchb.com
sfineman@lchb.com
dseltz@lchb.com
jgross@lchb.com

Elizabeth J. Cabraser (*pro hac vice* to be submitted)
Lieff Cabraser Heimann
  & Bernstein, LLP
275 Battery Street
San Francisco, CA 94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
ecabraser@lchb.com

Elizabeth A. Alexander (*pro hac vice* to be submitted)
Lieff Cabraser Heimann
  & Bernstein, LLP
One Nashville Place
150 Fourth Avenue North
Suite 1650
Nashville, TN 37219
Telephone:  (615) 313-9000
Facsimile: (615) 313-9965
ealexander@lchb.com

Richard R. Barrett (*pro hac vice* to be submitted)
Law Offices of Richard R. Barrett, PLLC
1223 Jackson Avenue, Suite 203
Oxford, MS 38655
Telephone: (662) 307-7000
rrb@rrblawfirm.net

Charles F. Barrett (*pro hac vice* to be submitted)
Attorney at Law
6518 Highway 100, Suite 210
Nashville TN 37205
Telephone: (615) 515.3393
Facsimile: (615) 515.3395
charles@cfbfirm.com