# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

DORIS BETTY ADDISON, on behalf of
herself [and] all others similarly situated,

        Plaintiff,

v.

CNX GAS COMPANY, LLC;
COMMONWEALTH COAL
CORPORATION; and JOHN DOES A -Z,

        Defendants.

**AMENDED
REPORT AND
RECOMMENDATION**
Case No. 1:10cv00065

This case comes before the court on defendants' motions to dismiss, (Docket
Item Nos. 12, 16) ("Motions"). The Motions are before the undersigned magistrate
judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have waived
oral argument, and the Motions are ripe for decision. As directed by the order of
referral, the undersigned now submits the following report and recommended
disposition.

### I. Facts and Procedural History

The plaintiff, Doris Betty Addison, sues CNX Gas Company, LLC,
("CNX"), Commonwealth Coal Corporation, ("Commonwealth"), and certain
unknown coal estate owners named as John Does A-Z on behalf of herself and

others similarly situated. The Complaint alleges that Addison owns certain gas interests located in Buchanan County, Virginia, and is entitled to royalty payments from CNX as lessor under a gas lease,[1] (Docket Item No. 13, Att. 6) ("Lease"). The gas interests at issue are the subject of four forced-pooling orders entered by the Virginia Gas and Oil Board, ("Board"), in 1998. (Docket Item No. 13, Atts. 2-5.) CNX claims that the royalties from these four drilling units have been paid into a Board-ordered escrow fund based on conflicting claims of ownership. Addison's Complaint seeks a ruling that she, and not the coal owner, Commonwealth, owns the rights to these gas interests, an accounting from CNX as to the royalties owed her and payment of these royalties either out of escrow or from CNX.

The court's jurisdiction over Addison's claim is based on diversity of citizenship. *See* 28 U.S.C.A. § 1332(a)(1) (West 2006). Addison also asserts that the court has jurisdiction over the proposed class action based on diversity of citizenship under 28 U.S.C. § 1332(d)(2)(A).

Addison alleges that, under the Lease, CNX is responsible for the proper determination, calculation, distribution and payment of royalties due and owing to her on gas produced from these drilling units. Addison alleges that CNX has underpaid royalties under the Lease by simply not paying royalties owed, by selling gas at below-market prices to affiliated companies, by underreporting the

---

[1] The leases at issue in this case were entered into between the plaintiff and CNX's predecessor in interest, Pocahontas Gas Partnership, ("Pocahontas").

amount of gas produced and by improperly deducting certain post-production costs or excessive post-production costs from royalties. Addison further alleges that CNX has failed to make the required deposits into escrow. Addison seeks compensatory and punitive damages from CNX for breach of contract, conversion, negligence, breach of implied duties to market, failure to act as a reasonably prudent operator, breach of fiduciary duties and unjust enrichment.

CNX moves for the court to dismiss Addison's claims for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failing to name all indispensable parties under Rule 12(b)(7). Commonwealth also moves to dismiss the claim against it on the same grounds.

CNX has filed a copy of the Lease with the court. (Docket Item No. 13, Att. 6.) The Lease contains the following language relevant to the Motions:

> The royalties to be paid Lessor are:
> (a) On gas, 12.5% of the value of gas produced from the leased premises and sold on or off the leased premises, or used off the leased premises, less a proportionate part of the costs incurred by Lessee in heating, sweetening, gathering, transporting, dehydrating, compressing, exacting, processing, manufacturing or any other post-production costs incurred by Lessee in making such gas or other substance merchantable.... Lessor shall pay a proportionate part of all excise, depletion, privilege and production tax that is now or hereafter levied, or assessed or charged on gas produced from the land.
> …

13.   All expressed or  implied covenants of this lease shall be subject to all federal and state laws, executive orders, rules or regulations, including restrictions on the drilling and production of wells and the price of oil, gas and other substances covered hereby, and this lease shall not be terminated in whole or in part, nor shall Lessee be held liable in damages for failure to comply therewith if compliance is prevented by, or if such failure is the result of, any such law, order, rule or regulation.

…

15.   …In the event Lessee is made aware of any claim or controversy inconsistent with Lessor's title, Lessee may suspend the payment of rentals, royalties and shut-in royalties hereunder without liability for interest thereon until the final determination of such claim or controversy, and then to distribute the same among those lawfully entitled thereto.

16.   No litigation shall be initiated by Lessor with respect to any breach or default by Lessee hereunder, for a period of at least 90 days after Lessor has given Lessee written notice fully describing the breach or default, and then only if Lessee fails to commence actions to remedy the breach or default within such period.

…

25.   This lease states the entire contract between the parties, and no representation or promise, verbal or written, on behalf of either party shall be binding unless contained herein.

The Complaint alleges that CNX began producing and selling coalbed methane, ("CBM"), in Southwest Virginia in the 1990s. It alleges that CNX's operations in Southwest Virginia are extensive, with more than 3,200 CBM wells resulting in the production, marketing and sale of millions of cubic feet of CBM by CNX in 2009.

CNX has filed copies of the Board's four pooling orders pertaining to Addison's interest. (Docket Item No. 13, Atts. 2-5.) In Board Docket No. 98-0324-0635, CNX's predecessor in interest, Pocahontas, filed an application to place a CBM gas well, AA-38, on an approximately 80-acre drilling unit. (Docket Item No. 13, Att. 2.) Following a hearing, the Board, by Report Of The Board Findings and Order approved on May 26, 1998, granted the application and approved the well and the pooling of all interests in the drilling unit. The order states in part:

> Escrow Provisions For Conflicting Claimants: If any payment of bonus, royalty payment, proceeds in excess of ongoing operational expenses or other payment due and owing under this Order cannot be made because the person entitled thereto cannot be made certain due to conflicting claims of ownership and/or a defect or cloud on the title, then such cash bonus, royalty payment, proceeds in excess of ongoing operations expenses, or other payment, … shall … be deposited by the Operator into the Escrow Account within one hundred twenty (120) days of recording of this Order, and continuing thereafter on a monthly basis with each deposit to be made, … by a date which is no later than sixty (60) days after the last day of the month being reported and/or for which funds are subject to deposit. Such funds shall be held for the exclusive use of, and sole benefit of, the person entitled thereto until such funds can be paid to such person(s) or until the Escrow Agent relinquishes such funds as required by law or pursuant to Order of the Board.

Addison is specifically listed in this order as having an ownership interest in the gas interest in one of the tracts of land covered by the order. Commonwealth is

also listed as having an ownership interest in only the coal interests for the same tract of land.

Addison also is listed as having an ownership interest in the gas interest in tracts of land covered by pooling orders issued by the Board on May 26, 1998, in Docket Nos. 98-0324-0637 for Drilling Unit No. Y-37, 98-0324-0631 for Drilling Unit No. Z-37 and 98-0324-0634 for Drilling Unit No. Z-38. Commonwealth is also listed as having an ownership interest in the coal rights in each of these tracts of land. Each of these orders contains the language set forth above regarding payments into escrow in cases involving conflicting claims. Each of these orders also contain attachments which show that CNX has CBM leases from Addison and Commonwealth for each of the tracts in which Addison claims that she holds the ownership of the gas estate.

## II. Analysis

The Motions seek dismissal of the Complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). Specifically, CNX argues that Addison's claims for an accounting should be dismissed because she has failed to exhaust her administrative remedies. CNX also argues that Addison's breach of contract claim should be dismissed because the facts alleged do not support the claim, Addison has failed to comply with the notice requirements under the Lease and the claim is barred by the statute of limitations. CNX further argues that Addison's Complaint fails to state claims under Virginia law for conversion,

negligence, breach of implied duties to market, failure to act as a reasonably prudent operator, breach of fiduciary duties, unjust enrichment and punitive damages.  In the alternative, CNX argues that many of these claims are barred by the statutes of limitations.  Commonwealth argues that Addison's claim for declaratory judgment as to ownership of the gas interests should be dismissed because ownership of CBM has not been decided as a matter of law. Both CNX and Commonwealth also argue that Addison's claim for declaratory judgment as to ownership of these gas interests and release of the escrowed royalties should be dismissed under Federal Rule of Civil Procedure 12(b)(7) for failure to name each of the indispensable parties.

The Supreme Court recently revisited the proper standard of review for a motion to dismiss and stated that the long-used "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), has "earned its retirement" and "is best forgotten" because it is an "incomplete, negative gloss on an accepted pleading standard." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007). In *Twombly*, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of ... 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).  Additionally, the Court established a "plausibility standard" in which the pleadings must allege enough to make it clear

that relief is not merely conceivable but plausible. *See Twombly*, 550 U.S. at 555-63.

The Court further explained the *Twombly* standard in *Ashcroft v. Iqbal*,129 S. Ct. 1937, 1949-50 (2009):

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. ... Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. ...
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

(Internal citations omitted.)

As stated above, CNX has filed the Lease and the four Board pooling orders relevant to Addison's claim with the court. Generally, a court may not consider matters outside of the pleadings on a motion to dismiss without converting it to a motion for summary judgment. *See* FED. R. CIV. P. 12(d); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). The court may, however, consider documents that are

attached to or referenced in the complaint. *See Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (citing 5A CHARLES A. WRIGHT &ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990)). Since the Lease and the pooling orders are referenced in the Complaint, this court will consider the Lease and the pooling orders as if their terms were contained in the Complaint. Thus, the court will determine whether the factual allegations set out in the Complaint, supplemented by the Lease and these four Board orders, give rise to a plausible claim for relief. Before the court may determine the plausibility of the claims, however, the court must determine what law controls.

Since this court's jurisdiction is based upon diversity, the court must apply the substantive law of the forum state, including the forum state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). This court sits in Virginia. Virginia adheres to the use of traditional rules applicable to conflict of laws. "Under such rules, questions of substantive law are governed by the law of the place of the transaction or the place where the right is acquired (lex loci)." *Frye v. Commonwealth*, 345 S.E.2d 267, 272 (Va. 1986). Under Virginia law, issues regarding real estate are governed by the law of the state where the property is located. *See Mort v. Jones*, 51 S.E. 220, 221 (Va. 1905). Furthermore, under Virginia law, claims for personal injury, whether they be for property damage or conversion, are governed by the law of the state where the injury occurred. *See Ryder Truck Rental, Inc. v. UTF Carriers, Inc*., 790 F. Supp. 637, 641 (W.D. Va. 1992). "Generally, where a cause of action arises in tort, Virginia applies the law of

the state where the tortious conduct or injury occurred." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4ᵗʰ Cir. 1999) (citing *Jones v. R.S. Jones & Assocs.*, 431 S.E.2d 33, 34 (Va. 1993)).

The Complaint alleges that the Lease was to be performed in Virginia. The Complaint also alleges that the Lease granted CNX's predecessor in interest the right to extract gas from real property located in Virginia. Furthermore, insofar as it is alleged that CNX has violated its obligations or exceeded its rights under the Lease or the law, these actions appear to have occurred with regard to the production of and accounting for gas gathered in Virginia. Therefore, under Virginia conflict of law rules, Virginia substantive law, including Virginia's statutes or periods of limitation, would control. *See Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) ("the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court"); *Atkins v. Schmutz Mfg. Co.*, 401 F.2d 731, 734 (4ᵗʰ Cir. 1968).

CNX and Commonwealth concede that, under Virginia law, Addison has a claim to establish the ownership of the gas interests at issue.[2] Nevertheless, each

---

[2] Under Virginia law, it appears to be a claim for "ejectment." *See Seoane v. Drug Emporium, Inc.*, 457 S.E.2d 93, 97 (Va. 1995) ("…[E]jectment was a common-law action designed to try title to land, Burks Pleading and Practice § 112 at 219 (4ᵗʰ ed. 1952), and by statute it continues to be a law action. [Virginia] Code §§ 8.01-131, -134." (in dicta); *See* C.J.S. *Mines and Minerals* § 181 (2009) ("Ejectment lies to recover…. mineral interests to which plaintiff has title...").

party attacks Count I of Addison's Complaint, which seeks a declaratory judgment as to the ownership of the CBM at issue. Commonwealth asserts that Addison's claim in Count I improperly relies on the Virginia Supreme Court's opinion in *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234 (Va. 2004), and a 2010 amendment to the Virginia Gas and Oil Act, ("Gas Act"), as establishing that Addison and others similarly situated own CBM rights as a matter of law. While I agree with Commonwealth's legal arguments on this point, that does not mean that Count I should be dismissed for failing to state a claim under Rule 12(b)(6).

In Count I of the Complaint, Addison requests that the court enter judgment under 28 U.S.C. § 2201 declaring the she and the class members, rather than the coal owners, own the CBM rights in the CBM units in which CNX claims there are conflicting claims. Elsewhere in the Complaint, Addison argues that the *Ratliff* opinion decided the issue of CBM ownership between gas and coal estate owners and should be applied as a matter of law in this case. In *Ratliff*, the Virginia Supreme Court upheld a Buchanan County Circuit Court opinion specifically holding that, absent an express grant of CBM, natural gases or minerals in general, the surface landowner retains the rights to CBM. *See Ratliff*, 593 S.E.2d 234, 238 (affirming *Ratliff v. Harrison-Wyatt, LLC,* Chancery No. 187-00, slip op. at 8 (Buchanan Cnty. Cir. Ct., Dec. 6, 2002)). The issue before the court in *Ratliff* was simply whether a grant of the coal estate also granted rights in the CBM found in that coal. The circuit court held "that a grant of coal rights does not include title to the CBM absent an express grant of CBM, natural gases, or minerals in general; and that the surface owner holds the rights to the CBM once it has separated from

the coal." *Ratliff,* Chancery No. 187-00, slip op. at 8. The court also ruled that, while the surface owner retained the rights to the CBM, the surface owner had no right to infringe upon the coal estate to fracture the coal to force it to release the CBM. *See Ratliff,* Chancery No. 187-00, slip op. at 8.

Addison's Complaint also notes that in 2010 the Virginia General Assembly amended the Gas Act to codify the rule of *Ratliff*. Virginia Code Annotated § 45.1-361.21:1 states: "A conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas." In their brief, Addison's counsel state that they are not asking the court to apply this statute retroactively to the ownership dispute in this case. Instead, counsel argue that the enactment of this statute in 2010 was a recognition by the General Assembly of the rule set forth in the *Ratliff* opinion, and the court should enforce the rule of *Ratliff* to hold, as a matter of law, that Addison owns the CBM rights at issue in this case.

Based on the facts before the court at this stage, the court cannot determine whether the holding of *Ratliff* will, as a matter of law, determine the ownership of the CBM rights at issue. The Complaint alleges that Addison owns the CBM rights at issue. The Complaint also alleges that Commonwealth owns the coal rights for these four CBM drilling units. The Complaint does not contain any facts with regard to how or by what means either party attained these rights. The fact that the court cannot determine ownership of the CBM interest as a matter of law does not mean, however, that the claim should be dismissed. To the contrary, whether it is determined as a matter of law or as a factual issue, Addison seeks, and has alleged,

sufficient facts to receive a determination of the ownership of this CBM. Therefore, I recommend that the court deny Commonwealth's motion on this ground.

CNX asserts that as the lessee-producer, it does not claim an ownership interest in the gas estate, and, therefore, it should not be a party to the ownership dispute. Thus, CNX argues that Count I of the Complaint fails to state a claim against it to determine ownership. CNX, however, possesses lease rights from both Addison and Commonwealth, the coal estate owner. Under Virginia law, it appears proper that Addison named the lessee of an adverse party, CNX, as a party defendant to her claim to establish ownership of the gas estate. *See* VA. CODE ANN. §8.01-133 (Repl. Vol. 2007). Therefore, I recommend that the court deny CNX's motion on this ground.

The defendants further argue that Addison's claim seeking a declaratory judgment regarding ownership of the CBM at issue should be dismissed for failing to join all necessary parties under Federal Rule of Civil Procedure 12(b)(7). In particular, the defendants argue that Addison's request in Count I for entry of a declaratory judgment that the coal owners do not own the rights to CBM without a specific express grant of those rights should be dismissed because all the necessary coal owners have not been joined as party defendants as required by Federal Rule of Civil Procedure Rule 19. Addison's counsel concede that all the coal owners in CBM wells operated by CNX and having conflicted claims of ownership must be added before judgment is entered, if it is to be effective against them. Addison's

counsel, however, argue that they have named the coal owner, Commonwealth, in the four pooled units at issue in this case as a party defendant. Addison's counsel also argue that they have named the unknown coal owners in all pooled units operated by CNX as John Does A-Z and ask to be allowed to conduct discovery before being required to identify and serve additional specific named coal owners.

Thus, there is no dispute that each of the coal owners in forced-pooled units operated by CNX where conflicting claims of ownership exist are necessary and indispensable parties before class action judgment may be entered. The issue is how and when this must be accomplished. Therefore, the court must decide whether this case should be dismissed at this stage because all such coal owners have not been added as named party defendants. CNX argues that the use of a John Doe defendant is allowed when the only way plaintiff can obtain a defendant's identity is through discovery. CNX argues that the use of John Doe defendants is not permitted where a plaintiff could obtain the defendants' identities through reasonable inquiry. CNX argues that, in this case, the identity of all the coal owners in all forced-pooled units operated by CNX where conflicting claims of ownership exist can be determined by examination of the Board's records. Addison, on the other hand, argues that a manual review of all of the Board's files involving forced-pooled units operated by CNX where conflicting claims of ownership exist would be time-consuming and expensive. Addison argues, instead, that she should be allowed to serve discovery on CNX to discover the identity of these parties based on counsel's belief that CNX likely has an electronic database or other record which lists the identity of each of these coal owners.

I have considered this same issue in two recent CBM cases involving forced-pooled units. *See* Report And Recommendation, *Adair v. EQT Prod. Co.*, No. 1:10cv00037 (W.D. Va. Jan. 21, 2011); Report And Recommendation, *Hale v. CNX Gas Co., LLC*, No. 1:10cv00059 (W.D. Va. Jan. 21, 2011). As I stated in those earlier opinions, the federal courts are hesitant to dismiss for failure to join a party, and, in general, a dismissal will be granted only when the defect cannot be cured. *See Sever v. Glickman*, 298 F. Supp. 2d 267, 275 (D. Conn. 2004). If a dismissal is granted, it should be granted without prejudice to refiling with the proper parties. *See Dredge Corp. v. Penny*, 338 F.2d 456, 464 (9th Cir. 1964). Furthermore, the moving party has the burden of persuading the court that dismissal is proper. *See Davis v. United States*, 192 F.3d 951, 958 (10th Cir. 1999).

In this case, both parties admit that the identities of those currently named as John Doe defendants are available and that Addison would be able to amend her pleadings to add those named parties. The parties argue only over whether Addison should be forced to identify these parties and make the amendment prior to conducting any discovery in the case. The case law is replete with the recognition that courts should take a pragmatic approach to deciding motions to dismiss for failure to join a party. *See Prescription Plan Serv. Corp. v. Franco*, 552 F.2d 493, 496 (2nd Cir. 1977) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)). Furthermore, this court has not yet decided whether to certify this matter as a class action. That being the case, I recommend that the court deny the Motions insofar as they seek to dismiss Addison's claims at this stage for failure to name each of the individual coal owners.

CNX also asserts that Addison's request for an accounting in Count I of the Complaint must be dismissed based on her failure to exhaust administrative remedies under the Gas Act. The Virginia Supreme Court has recognized that an accounting can be sought to determine what, if any, amounts are owed pursuant to a mineral lease. *See Pepper v. Dixie Splint Coal Co.*, 181 S.E. 406, 412 (Va. 1935). I previously have held that the Gas Act contains no provision requiring a royalty owner to exhaust administrative remedies before pursuing a tort claim against a producer. *See* Report And Recommendation, *Adair,* No. 1:10cv00037 at 41. In *Adair*, I also held that the Gas Act makes no specific mention of any Board authority to entertain claims, such as one for an accounting, between royalty owners and producers. *See* No. 1:10cv00037 at 41. To further complicate matters, the rights of the royalty owner and producer in this case are a matter of contract, in addition to being the subject of a Board pooling order. I can find no language in the Gas Act giving the Board authority to adjudicate contract claims. Therefore, I hold that the Gas Act does not preempt a CBM royalty owner's claim for an accounting against a producer, and I recommend that the court deny CNX's motion to dismiss the claim for an accounting.

CNX also argues that Addison's Complaint fails to state a cause of action for breach of contract. In particular, CNX argues that Addison's Complaint fails to sufficiently allege an enforceable contract. CNX also argues that the Lease prohibits litigation without notice, specifically provides for the deduction of certain post-production costs and allows for the suspension of royalty payments in the

event of an ownership dispute. CNX further argues that any breach of contract claim is time-barred.

I will spend little time addressing the argument that Addison has not sufficiently pled a claim based on breach of contract because she did not attach the specific contract at issue to her Complaint. "In Virginia, the elements of a cause of action for breach of contract are as follows: (1) a legal obligation of a defendant to the plaintiff; (2) a violation or a breach of that right or duty; and (3) a consequential injury or damage to the plaintiff." *Aviation Res., Inc. v. XL Specialty Ins. Co.*, 276 F. Supp. 2d 567, 568 (W.D. Va. 2003) (citing *Brown v. Harms,* 467 S.E. 2d 805, 807 (Va. 1996)). In her Complaint, Addison alleges that she and the class members are royalty owners under certain gas and oil leases held by CNX. She further alleges that, under these leases, CNX is responsible for the proper determination, calculation, distribution, reporting and payment of the royalties due. The Complaint alleges that, because CNX filed information with the Board alleging that there were disputes in ownership of these gas interests, Board pooling orders required that all royalties due under these leases were to be deposited into escrow accounts. Addison alleges that CNX has failed to pay the royalties owed under the leases into escrow. In fact, the Complaint alleges in great detail the acts Addison alleges that CNX has taken in furtherance of its breach of the leases at issue by the underpayment of royalties owed. Further, the Complaint alleges that Addison and the class members have been injured by CNX's failure to place the proper amount of royalties into escrow. Under Virginia law, these facts are

sufficient to plead a cause of action for breach of contract. Therefore, I will recommend that the court deny CNX's motion on this ground.

CNX further argues that the terms of the Lease allow it to suspend royalty payments any time that there are conflicting claims as to the ownership of the gas interests. CNX asserts that there are conflicting claims between the coal estate owners and the gas estate owners as to the ownership of the gas interests at issue in this case. Therefore, CNX argues, under the Lease, it has no obligation to pay any royalties until these claims are resolved. CNX further argues that under the applicable pooling orders, since there are conflicting claims, all royalties payable under the Lease must be, and have been, deposited into escrow. Addison claims that CNX's argument on this point is a "red herring," and argues that whether CNX could or could not suspend her royalty payments under the Lease "is immaterial to the primary liability issue herein – whether CNX has properly paid the full amount of royalty payments attributable to Plaintiff's interest into escrow."

Based on my review of the Complaint, it appears that Addison's counsel misconstrues her breach of contract claim. Whether the Lease allows CNX to suspend royalty payments is not "immaterial" to whether CNX breached the Lease by failing to make royalty payments as required by the Lease. Count II of the Complaint is entitled, "BREACH OF CONTRACT." It states, in part:

> 62.    Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

63.    The above-described conduct constitutes violations and breaches of the obligations, expressed and/or implied, which CNX owes to Plaintiff and the Class Members under their Leases.

Thus, this count alleges violations of CNX's obligations under its leases. Plaintiff's argument to the contrary notwithstanding, the terms of the Lease between Addison and CNX are *material* to the disposition of this count.

The court's primary focus on an issue of contractual interpretation is to ascertain and give effect to the intent of the parties *See Pocahontas Mining Ltd. Liab. Co., v. CNX Gas Co., LLC,* 666 S.E.2d 527, 531 (Va. 2008). The intent of the parties as expressed in their contract controls. *See Bender-Miller Co v. Thomwood Farms, Inc.*, 179 S.E.2d 636, 639 (Va. 1971). It is the court's responsibility to determine the intent of the parties from the language they employ. *See Bender,* 179 S.E.2d at 639 (citing *Seaboard Air Line R.R. Co. v. Richmond-Petersburg Turnpike Auth.*, 121 S.E.2d 499, 503 (Va. 1961)). Where the agreement is plain and unambiguous in its terms, the rights of the parties will be determined from the terms of the agreement. *See Harris v. Woodrum*, 350 S.E.2d 667, 669 (Va. Ct. App. 1986).

"The question whether a contract is ambiguous presents an issue of law." *Pocahontas Mining,* 666 S.E.2d at 530. In *Pocahontas Mining,* the court noted that "[a]n ambiguity exists when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time." 666 S.E.2d at 531

(citing *Video Zone, Inc. v. KF & F Props., L.C.,* 594 S.E.2d 921, 923 (Va. 2004); *Tuomala v. Regent Univ.,* 477 S.E.2d 501, 505 (Va. 1996); *Galloway Corp. v. S.B. Ballard Constr. Co.,* 464 S.E.2d 349, 355 (Va. 1995)). The court further noted that "[t]he mere fact that the parties disagree about the meaning of the contract's terms is not evidence that the contract language is ambiguous." *Pocahontas Mining,* 666 S.E.2d at 531 (citing *Pocahontas Mining Ltd. Liab. Co. v. Jewell Ridge Coal Corp.,* 556 S.E.2d 769, 771 (Va. 2002); *Galloway,* 464 S.E.2d at 354; *Wilson v. Holyfield,* 313 S.E.2d 396, 398 (Va. 1984)). The *Pocahontas Mining* court also stated that "[i]n determining whether disputed contractual terms are ambiguous, we consider the words employed by the parties in accordance with their usual, ordinary, and popular meaning." 666 S.E.2d at 531 (citing *Video Zone, Inc.,* 594 S.E.2d at 924; *Haisfield v. Lape,* 570 S.E.2d 794, 796 (Va. 2002); *Pocahontas Mining,* 556 S.E.2d at 772)).

As stated above, the Lease contains the following language:

> In the event Lessee is made aware of any claim or controversy inconsistent with Lessor's title, Lessee may suspend the payment of rentals, royalties and shut-in royalties hereunder without liability for interest thereon until the final determination of such claim or controversy, and then to distribute the same among those lawfully entitled thereto.

"Suspend" means "[t]o cause to stop for a period" or "[t]o hold in abeyance." *See* WEBSTER'S II NEW COLLEGE DICTIONARY, ("Webster's"), 1110 (Houghton Mifflin Company 2001). Synonyms of "suspend" are cease, discontinue, interrupt and

terminate. *See* Webster's at 1111. Thus, the plain and unambiguous terms of the Lease allow CNX to stop paying royalties, *if* it is aware of any claim or controversy "inconsistent with" Addison's title. "Inconsistent" means "[n]ot in agreement or harmony." *See* Webster's at 561. Synonyms of "inconsistent" are contradictory and incompatible. *See* Webster's at 561.

In the Complaint, Addison alleges that there are no true conflicting claims. Instead, Addison alleges that CNX falsely asserted that there were conflicting claims before the Board to avoid paying the royalties owed under the Lease. The problem with this argument is that the Board, in its pooling orders, recognized that there were conflicting claims as to the ownership of this CBM. In Exhibit E to each of these orders, the Board set out the conflicting claims in each drilling unit.

The Gas Act specifically provides that the Board's orders may be appealed to the appropriate circuit court. *See* VA. CODE ANN. § 45.1-361.9 (2002 Repl. Vol.) Addison does not allege that she sought any review of the Board's finding that conflicting claims existed. In the series of CBM cases before the court, plaintiffs' counsel have been careful to repeatedly assert that they are not attacking the validity of any Board order, and, therefore, their clients' claims were not barred by a failure to exhaust administrative remedies. That argument, however, cannot prevail on this claim. Addison's allegation that there are no conflicting claims is in direct conflict with the Board's finding that conflicting claims exist.

District Courts do not have jurisdiction over challenges to state court decisions. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 416 (1923). "Moreover, where there exists an available state court appellate procedure, a litigant's 'deliberate bypass of those procedures that envisioned (ultimately) a reviewable final state-court judgment, itself under *Feldman* not subject to federal district-court review, should not, it would seem, entitle [the litigant] to a review … that would have been unavailable to him if he had pursued his claim to final state court judgment.'" *Edmonds v. Clarkson,* 996 F. Supp. 541, 548 (E.D. Va. 1998) (quoting *Thomas v. Kadish,* 748 F.2d 276, 282 (5th Cir. 1984)). That being the case, the court has no jurisdiction to disturb this finding of the Board. Based on the Board's finding that conflicting claims exist, I recommend the court grant CNX's motion on this ground and dismiss Addison's contract claim as a matter of law with prejudice.

CNX further argues that Addison's contract claim should be dismissed insofar as Addison claims that it breached the Lease by improperly deducting post-production costs. Specifically, CNX argues that the plain and unambiguous language of the Lease allows it to deduct certain post-production costs from the royalties owed. The Lease provides for the payment of a royalty of 12.5 percent of the value of the gas produced "less a proportionate part of the costs incurred by Lessee in heating, sweetening, gathering, transporting, dehydrating, compressing, exacting, processing, manufacturing or any other post-production costs incurred by Lessee in making such gas … merchantable." Addison's counsel concede that this language is plain and unambiguous and allows the deduction of these costs -- if

properly calculated. Addison, however, asserts that CNX has improperly calculated royalties. In particular, the Complaint states:

> … Plaintiff alleges that there are certain instances where the Lease royalties deposited by CNX into escrow were calculated improperly and were insufficient. For example, in marketing the CBM it produced, CNX was obligated, by virtue of its undertakings and/or as the CBM Unit operator, to act as a reasonably prudent operator and to market and sell the CBM at the highest price obtainable. However, in calculating and depositing into escrow its Lease royalty payments, CNX has, upon information and belief, improperly used gas prices that were less than the highest price obtainable, including prices from the sale of gas by CNX to affiliates on a non-arm's length basis. Further, in calculating and depositing into escrow its Lease royalty payments, CNX has not paid royalties on all of the volumes of CBM it produced, and CNX has deducted post-wellhead costs that were improper and/or excessive, including costs in excess of actual, direct, and/or reasonable costs and including costs that, at times, exceeded the sales price of the CBM.

These allegations, taken as true, assert claims for breach of contract for deductions taken, other than those post-production costs specifically allowed by the contract. Therefore, I find that Addison's breach of contract claim should not be dismissed on this basis.

CNX further argues that Addison's breach of contract claim should be dismissed because she did not comply with the notice provision contained in the Lease. As stated above, the Lease contains the following language:

16.   No litigation shall be initiated by Lessor with respect to any breach or default by Lessee hereunder, for a period of at least 90 days after Lessor has given Lessee written notice fully describing the breach or default, and then only if Lessee fails to commence actions to remedy the breach or default within such period.

Addison does not allege in her Complaint that she complied with this notice provision before filing this action. Addison also does not assert that she complied with this provision in her written arguments in opposition to the Motions.  Instead, Addison argues that failure to provide notice should not be a reason to dismiss her case because providing notice would have been a "useless act" with regard to her request for a judicial determination as to the ownership of these gas interests.

Again, I believe Addison's counsel misconstrues the argument.  CNX does not claim that Addison's failure to give notice as required under the Lease prevents her from seeking a judicial determination to establish ownership of these gas interests. Instead, CNX argues that, under the terms of the Lease, the giving of notice is a condition precedent to filing a claim to recover for breach of the Lease. Put another way, CNX argues that Addison's failure to give it notice of the alleged "breach or default" of its obligations under the Lease, and an opportunity to remedy any alleged breach or default, prevents her from filing suit over that breach or default.

"Where the parties to a contract have specified therein the conditions upon which an action upon the contract may be maintained, such conditions precedent

generally must be complied with before an action for breach of contract may properly be brought." 4A MICHIE'S JURISPRUDENCE Contracts § 78 (2007 Repl. Vol.) (*citing Vaughan Constr. Co. v. Virginian Ry. Co.*, 97 S.E. 278 (W. Va. 1918)).

> There is no dispute and no doubt regarding the right of the parties to specify the conditions upon which an action upon a contract may or may not be maintained without compliance with the conditions imposed by it and agreed to by them. Such provisions are not unusual, and as a general rule courts uphold them.

*Vaughan Constr. Co.*, 97 S.E. at 279-80. Furthermore, performance of contractual conditions is an essential element of a breach of contract action, and, if not alleged, the count is defective and must be dismissed. *See E. River Constr. Corp. v. District of Columbia*, 183 F.Supp 684, 685 (D.D.C. 1960); *see also* FED. R. CIV. P. 9(c) ("In pleading conditions precendent, it suffices to allege generally that all conditions precedent have occurred or been performed."). Here, Addison has not alleged that she complied with this condition precedent to bringing suit against CNX for breach of the Lease. Therefore, I recommend that Addison's breach of contract claim be dismissed on this basis. Any dismissal on this basis alone, however, would be without prejudice to Addison's ability to refile this claim once she could plead compliance with this condition.

CNX also argues that Addison's claims are time-barred. Plea of the statute of limitations is an affirmative defense. Thus, CNX bears the burden of proving

that Addison's claims are barred by the statute of limitations. *See Heirs of Roberts v. Coal Processing Corp*, 369 S.E.2d 188, 190 (Va. 1988). Under Virginia law, an action based upon a written contract must be filed within five years of accrual. *See* VA. CODE ANN. § 8.01-246(2) (2007 Repl. Vol.). Also, under Virginia law, an action for injury to property must be filed within five years of accrual. *See* VA. CODE ANN. § 8.01-243(B) (2007 Repl. Vol. & 2010 Cum. Supp.) This five-year limitations period for property damage applies to claims for conversion, *see Bader v. Cent. Fid. Bank,* 427 S.E.2d 184 (Va. 1993), as well as all claims where the focus is, as it is here, injury to property. *See Vines v. Branch*, 418 S.E.2d 890, 894 (Va. 1992). Furthermore, Virginia law states that a right of action accrues on "the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered...." VA. CODE ANN. § 8.01-230 (2007 Repl. Vol.). As stated above, Addison's claims all revolve around the allegation that CNX has taken CBM owned by Addison and not paid the royalties owed under the Lease. CNX argues that it has deducted post-production expenses from the royalties paid into escrow on this lease for 12 years. If deducting post-production expenses from royalties breached the Lease, CNX argues, the breach occurred when these deductions were first taken more than 12 years ago.

Addison asserts that Virginia's "continuing services" or "continuing duty" rule should be applied by the court to prevent the accrual of her claims and, thus, toll the running of the statute of limitations until the termination of the undertaking or relationship upon which the claim is based. I have recently rejected this

argument in a similar CBM case.  In a Report And Recommendation entered in *Healy v. Chesapeake Appalachia, LLC*, No. 1:10cv23, 2011 WL 24261, at *8 (W.D. Va. Jan. 5, 2011),  I recommended to the court that Virginia's "continuing services" or "continuing duty" rule should not be applied to the facts of that case. While I will not repeat my legal analysis in its entirety here, my decision in *Healy* turned on the parties' relationship. In particular, I held that Healy did not claim that defendants had contracted to provide any type of continuing professional services, such as legal or medical services. *See Beale v. Moore*, 32 S.E.2d 696, 698-99 (Va. 1945) (continuous services rule applied in legal malpractice claim); *Farley v. Goode*, 252 S.E.2d 594, 599 (Va. 1979) ("continuous treatment" rule applied in medical malpractice claim).  Instead, I found that Healy's claims all arose from allegations that the defendant had underpaid royalties due her under her lease. The same is true of Addison's claims in this case. That being so, I see no reason why the "continuing services" or "continuing duty" rule should be applied in this case.

That does not mean, however, that Addison's claims should be dismissed as time-barred. CNX, itself, argues that, because of the conflicting claims, no royalties are owed Addison until there is a determination as to the ownership of these gas interests.  In my Report And Recommendation entered in  *Hale,* I found that, under Virginia law, a claim for royalties could not accrue until an ownership interest in the CBM had been established.  In *Hale,* I recognized that the Virginia Supreme Court has long held that the statute of limitations cannot begin to run with regard to a property claim prior to the plaintiff having a property right that could be legally enforced. *See Hope v. Norfolk & W. R.R. Co.,* 79 Va. 283 (1884) (citing

*Ball v. Johnson's Ex'r,* 8 Gratt. 281 (1851) (statute of limitations did not commence to run against the owners of the remainder until the death of the holder of the life estate because until termination of life estate, remainder men had no cause of action to recover property)).  While Addison and CNX's relationship is governed by contract, CNX asserts that no royalties have been paid to Addison because they have been paid into escrow under the Board's pooling orders. Under the Gas Act, before a claimant has an enforceable right to proceeds placed in escrow, she must show an ownership interest in the CBM. *See* VA. CODE ANN. § 45.1-361.22(5) (2002 Repl. Vol. & 2010 Cum. Supp.).  Also, the Gas Act does not require a determination of ownership to be sought or issued within any particular time frame. Therefore, I recommend that the court reject this argument and deny CNX's motion on this basis.

CNX also argues that Addison's Complaint fails to state a claim under Virginia law for conversion. This court has recognized that, under Virginia law, a claim for conversion may be pled in conjunction with a breach of contract claim. *See Combined Ins. Co. of Am. v. Wiest*, 578 F. Supp. 2d 822, 833 (W.D. Va. 2008). "'[T]he duty not to convert the property of another for one's own purposes' exists in the absence of any contract, and thus provides the basis for an 'independent tort from the contract claims' arising out of the parties' relationship." *Combined Ins. Co. of Am.*, 578 F. Supp. 2d at 833 (quoting *Hewlette v. Hovis*, 318 F. Supp. 2d 332, 337 (E.D. Va. 2004)).  Virginia law defines conversion as any distinct act of dominion or control wrongfully exerted over the property of another, either inconsistent with, or in denial of, the owner's rights. *See Simmons v. Miller*, 544

S.E.2d 666, 679 (Va. 2001); *Hairston Motor Co. v. Newsome*, 480 S.E.2d 741, 744 (Va. 1997). In this case, Addison has alleged that CNX has wrongfully converted certain amounts of the CBM gas produced from the wells at issue for its own use without properly accounting for it or paying royalties on it. Addison also alleges that CNX has wrongfully withheld for its own use monies owed to Addison and others similarly situated without properly accounting for it. I find that these facts are sufficient to allege an independent cause of action for conversion, and I recommend that the court deny CNX's motion as to Count III. *See PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438, 443 (Va. 2003) (any wrongful exercise over another's goods, including sums of money, in denial of the lawful owner's rights, states a claim for conversion).

CNX further argues that Addison's Complaint fails to state a claim for negligence. In Count IV, Addison alleges that she has been injured by CNX's negligent failure to accurately identify the owners of the gas interest at issue and by failing to seek disbursement of escrowed royalties to Addison after the Virginia Supreme Court's decision in *Ratliff*, 593 S.E.2d 234. In Count V, Addison alleges that she has been injured by CNX's negligent failure to act as a reasonably prudent operator and to market the CBM produced from these wells.

To avoid allowing every breach of contract to be turned into a tort, the Virginia Supreme Court has held that "in order to recover in tort, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" *Augusta Mut. Ins. Co. v.*

*Mason*, 645 S.E.2d 290, 293 (Va. 2007) (quoting *Foreign Mission Bd. of S. Baptist Convention v. Wade*, 409 S.E.2d 144, 148 (Va. 1991)). "In determining whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." *Richmond Metro. Auth. v. McDevitt Street Bovis*, *Inc.,* 507 S.E.2d 344, 347 (Va. 1998). In *Oleyar v. Kerr, Trustee*, 225 S.E.2d 398, 399-400 (Va. 1976), the Virginia court distinguished between actions for tort and contract:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

As this court recently recognized, this Virginia precedent does not prevent the raising of all tort claims among parties whose relationship is based on contract. *See Pre-Fab Steel Erectors, Inc. v. Stephens*, 2009 WL 891828 (W.D. Va. Apr. 1, 2009). In fact, the Virginia Supreme Court in *Richmond Metro* recognized that "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty." 507 S.E.2d at 347. It appears these cases turn on the distinction between nonfeasance or malfeasance, simply not performing as required under a contract, and misfeasance, performing a wrongful act. *See Atlas Partners II, L.P. v. Brumberg, Mackey & Wall, PLC*, 2006 WL 42332, at *8 (W.D. Va. Jan. 6,

2006) (citing *Insteel Indus., Inc. v. Costanza Contracting Co., Inc.*, 276 F. Supp. 2d 479, 485 (E.D. Va. 2003)).

In Count IV, Addison claims that the wrongful acts performed by CNX were improperly identifying the persons and entities having an ownership interest in the gas estates at issue, falsely asserting that conflicting claims of ownership existed in order to procure orders from the Board requiring the payment of royalties into escrow and failing to file supplemental ownership information with the Board based on the Virginia Supreme Court's 2004 *Ratliff* opinion to allow royalty payments to be released from escrow to the rightful owners.

To prove a claim for negligence under Virginia law, a plaintiff must show a legal duty, breach of that duty and a resulting injury. *See Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 365 S.E.2d 751, 754 (Va. 1988). Furthermore, the issue of whether a legal duty exists is a "pure question of law." *Kellermann v. McDonough*, 684 S.E.2d 786, 790 (Va. 2009). It is important to note that pooling orders at issue in this case were entered in 1998, four years before the Virginia Supreme Court issued its decision in *Ratliff*. I previously have determined that the Gas Act imposes a duty on the unit operator to supplement its previous filings with the Board to update ownership information in only one circumstance: Upon receipt of an affidavit from conflicting claimants affirming that they have reached a voluntary settlement of ownership interests or have received a final decision rendered by a court or arbitrator as to ownership of the CBM within the unit. *See*

Report And Recommendation, *Adair*, No. 1:10cv00037; *see also* VA. CODE ANN. § 45.1-361.22(5). Addison's Complaint alleges no such facts.

Nonetheless, Addison also alleges that CNX was negligent by improperly identifying the persons and entities having an ownership interest in the gas estates at issue and falsely asserting that conflicting claims of ownership existed in order to procure orders from the Board requiring the payment of royalties into escrow. While the Gas Act does not specifically require the identification of all CBM owners, the Gas Act does require every applicant who applies to establish a CBM pooling unit to give notice of the application to "each gas or oil owner, coal owner, or mineral owner having an interest underlying the tract which is the subject of the hearing." VA. CODE ANN. § 45.1-361.19(A) (2002 Repl. Vol. & 2010 Cum. Supp.). Obviously, the potential owners must first be identified before notice can be given to them. The Gas Act further states: "Whenever a hearing applicant is unable to provide such written notice because the identity or location of a person to whom notice is required to be given is unknown, the hearing applicant shall promptly notify the Board of such inability." VA. CODE ANN. § 45.1-361.19(A). Thus, I find that the Gas Act creates a duty on the part of an applicant seeking to establish a CBM pooling unit to identify all persons having an ownership interest in the CBM at issue or to notify the Board that it has been unable to do so.

While the court does not currently have before it the applications which were filed before the Board in this case, it does have the four pooling orders entered by the Board. According to each of these orders, the Board found that:

> …[T]he Applicant has (1) exercised due diligence in conducting a search of the reasonably available sources to determine the identity and whereabouts of gas and oil owners, coal owners, mineral owners and/or potential owners, i.e., persons identified by Applicant as having ("Owner") or claiming ("Claimant") the rights to Coalbed Methane Gas in all coal seams below the Tiller Seam… in Subject Drilling Unit….

Each of the orders also states: "Conflicting Owners/Claimants are listed in Exhibit E." Addison's and Commonwealth's interests are listed on Exhibit E to each of the orders. Thus, the Board, through its pooling orders, has found that CNX's predecessor in interest acted reasonably in identifying the potential CBM owners. Furthermore, as stated above, the Board has found that conflicting claims of ownership exist. Therefore, to allow Addison's negligence claim contained in Count IV is, in essence, to allow an indirect attack on the Board's findings on these issues. Again, District Courts do not have jurisdiction over challenges to state court decisions. *See Feldman*, 460 U.S. 462; *Rooker*, 263 U.S. at 416; *Edmonds*, 996 F. Supp. at 548.

As stated above, the Gas Act specifically provides that the Board's orders may be appealed to the appropriate circuit court. *See* VA. CODE ANN. § 45.1-361.9 (2002 Repl. Vol.) Addison does not allege that she sought any review of the Board's finding that CNX's predecessor had aced reasonably in identifying potential CBM owners or that conflicting claims existed. Again, plaintiffs' counsel have been careful to repeatedly assert that they are not attacking the validity of any

Board order, and, therefore, their clients' claims were not barred by a failure to exhaust administrative remedies. That argument cannot prevail on this claim, either. Addison's negligence claim in Count IV, if allowed to proceed, would challenge the Board's finding that conflicting claims exist. That being the case, I recommend that Count IV of the Complaint should be dismissed for a lack of jurisdiction.

In Count V, Addison claims that CNX was negligent by failing to act as a reasonably prudent operator and by failing to market the gas produced. The Lease makes no mention of a duty on behalf of CNX to act diligently and prudently or to market any oil or gas discovered. Addison argues that it is well-established that oil and gas leases impose certain implied duties on an operator. Those include, she argues, a duty to market the gas produced and to operate diligently and prudently. In *Legard v. EQT Prod. Co.,* No. 1:10cv00041, 2011 WL 86598, at *10 (W.D. Va. Jan. 11, 2011), I held that Virginia courts would recognize an implied duty on the part of oil and gas lessees to operate diligently and prudently, including a duty to market the gas produced. I further held, however, that the Virginia courts would not recognize a separate cause of action for a breach of these implied duties. *See Charles E. Brauer Co., Inc. v. Nationsbank of Va., N.A.*, 466 S.E.2d 382, 385 (Va. 1996) (breach of an implied duty gives rise to a breach of contract action only). Therefore, I recommend that the court grant CNX's motion and dismiss Count V of the Complaint insofar as Count V attempts to state a separate claim for breach of implied duties under the Lease. Any breach of these duties may be considered as

evidence of Addison's breach of contract claim found in Count II of the Complaint, should Count II survive these Motions.

In Count VI of the Complaint, Addison alleges that CNX breached fiduciary duties by failing to accurately identify the owners of the CBM unit, failing to calculate and pay her and the class members the correct royalties they were due, failing to account for all of the gas CNX produced and failing to fully and accurately report and disclose all material information relating to CNX's calculation of royalty payments. In *Legard*, I found that, where the parties' business relationship was established by written lease, and the lease did not impose any fiduciary duties on the lessee, none existed under Virginia law. In *Adair*, I found that the Virginia courts would recognize a fiduciary duty on the part of forced-pooled unit operators to properly account for and pay into escrow the royalties owed CBM owners whose interests were deemed leased under the Gas Act. In this case, Addison voluntarily leased her CBM interests. The Lease does not impose any fiduciary duties on CNX. Addison's interests, however, also are the subject of four Board pooling orders requiring payment into escrow of any royalties owed based on the Board's finding of conflicting claims of ownership. Thus, I must determine whether the payment into escrow of any royalties owed under a voluntary lease would create any fiduciary duty on the part of the lessee.

Under Virginia law, a fiduciary relationship exists where "special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." *H-B*

*Ltd. P'ship v. Wimmer*, 257 S.E.2d 770, 773 (Va. 1979). Fiduciary duties can arise either from a contractual provision or through a common law duty. *See Wade*, 409 S.E.2d at 148. Virginia courts have recognized fiduciary relationships between an attorney and client, an agent and principal, a trustee and beneficiary, a parent and child and a caretaker and invalid. *See Rossmann v. Lazarus*, 2008 WL 4642213, at *7 (E.D. Va. Oct. 15, 2008). When the parties' relationship is entirely defined by contract, and the contract imposes no fiduciary duty, none exists. *See Rossmann*, 2008 WL 4642213, at *7.

Unlike the *Healy* case, the parties' relationship in this case is not entirely defined by contract. While the Lease calls for payment of royalties to Addison, CNX concedes that Addison has received no royalties to date because, like in the *Adair* case, the Board's pooling orders require any amounts owed to be deposited into escrow pending determination of ownership of the CBM. In cases such as this – with conflicting claims of CBM ownership – the Gas Act simply allows the unit operators to pay the contested royalties into escrow without any required accounting or reporting to potential CBM owners. Thus, in these cases, the unit operator acts much like a trustee of these funds, *see Young v. W. Edmond Hunton Lime Unit*, 275 P.2d 304, 309 (Okla. 1954), and the Virginia Supreme Court has recognized that a trustee owes a fiduciary duty to the beneficiary of a trust. *See Broaddus v. Gresham*, 26 S.E.2d 33, 36 (Va. 1943). Therefore, I hold the Virginia courts would impose a fiduciary duty upon unit operators to properly account for and pay into escrow the royalties owed, even if those royalties are owed pursuant to a voluntary lease. That being the case, I find that the Complaint sufficiently

pleads a cause of action for breach of fiduciary duties, and I recommend that the court deny CNX's motion to dismiss Count VI.

Regarding Addison's claim for unjust enrichment contained in Count VII of the Complaint, Virginia law allows a plaintiff to plead quasi-contract or implied contract theories of quantum meruit or unjust enrichment as alternative theories of liability only when the validity of an express contract is challenged. *See Cochran v. Bise,* 90 S.E.2d 178, 181-82 (Va. 1956) (quoting *Roller v. Murray*, 72 S.E. 665, 666 (Va. 1911)); *Royer v. Bd. of Cnty. Supervisors of Albemarle Cnty.*, 10 S.E.2d 876, 881 (Va. 1940) (citing *Hendrickson v. Meredith,* 170 S.E. 602, 604 (Va. 1933)). Where there is an express and enforceable contract in existence, which governs the rights of the parties, the law will not imply a contract. *See Ellis & Myers Lumber Co. v. Hubbard*, 96 S.E. 754, 760 (Va. 1918). The Complaint in this case specifically alleges that the parties' relationship, rights and obligations are set out in a valid express contract, the Lease. That being the case, I find that Addison cannot recover for unjust enrichment, and I recommend that the court dismiss Count VII of the Complaint.

In the Complaint, Addison also seeks an award of punitive damages. CNX argues that the Complaint fails to state a claim for such damages because Addison has not properly pled allegations of actual malice. CNX also argues that, in Virginia, punitive damages cannot be awarded for breach of contract. For the following reasons, I find that the plaintiffs have sufficiently pled a claim for

punitive damages, and I recommend that the court deny CNX's motion in this regard.

In *Giant of Va., Inc. v. Pigg*, 152 S.E.2d 271, 277 (Va. 1967), the Virginia Supreme Court explained the circumstances under which punitive damages may be awarded as follows:

> Punitive . . . damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others.  They are allowed not so much as compensation for plaintiff's loss, as to warn others and to punish the wrongdoer, if he has acted wantonly, oppressively, or with such malice as to evince a spirit of (mischief) or criminal indifference to civil obligations.  Wilful or wanton conduct imports knowledge and consciousness that injury will result from the act done.

(citations omitted).  The Virginia Supreme Court has defined "willful and wanton negligence" as:

> acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another.

*Griffin v. Shively*, 315 S.E.2d 210, 213 (Va. 1984).

While CNX is correct that the general rule is that punitive damages are not allowed for breach of contract, *see Goodstein v. Weinberg*, 245 S.E.2d 140, 143

(Va. 1978), they may be allowed based on a "willful, independent tort in a count separate from that which alleges a breach of contract." *Kamlar Corp. v. Haley*, 299 S.E.2d 514, 518 (Va. 1983). In *Kamlar*, the Virginia Supreme Court noted that this "serves to notify the defendant of the precise allegations he must meet at trial to resist that part of the claim which supports punitive damages." 299 S.E.2d at 518. I find that Addison has met the Virginia Supreme Court's requirements by sufficiently pleading the independent tort of conversion, as set out above. Taking Addison's allegations contained in the Complaint as true, as I must, I note that the conversion by CNX was not based on mistake, but was intentional. I find that such allegations suffice to state a claim for punitive damages, at least at this stage of the proceedings, and I recommend that the court deny CNX's motion on this ground.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.    The portion of Count I which seeks a declaratory judgment as to the ownership of the CBM at issue should not be dismissed simply because the Supreme Court of Virginia's opinion in *Ratliff* is not determinative as a matter of law at this stage;

2.    CNX, as the lessee of an adverse party, is a proper defendant to Addison's claim to establish ownership of the CBM interests;

3.    The portion of Count I which seeks a declaratory judgment as to the ownership of the CBM at issue should not be dismissed at this stage for failure to name all the coal owners as defendants;

4.    The portion of Count I which seeks an accounting from CNX should not be dismissed for failure to exhaust administrative remedies;

5.    Count II of the Complaint should not be dismissed simply because Addison failed to attach the contract at issue, the Lease, to her Complaint;

6.    The clear and unambiguous language of the Lease allows the suspension of royalty payments to Addison if CNX is aware of any conflicting claim to ownership of the CBM at issue;

7.    The Board's orders found that there were conflicting claims to the ownership of the CBM at issue;

8.    Count II of the Complaint should be dismissed with prejudice as a matter of law because under the Lease, CNX is allowed to suspend royalty payments based on the conflicting claims to ownership of the CBM;

9.    Count II of the Complaint should not be dismissed at this stage simply because the Lease allows deduction of certain post-production costs from royalties;

10.   Count II of the Complaint should be dismissed without prejudice because Addison has failed to allege that she gave notice of the alleged breaches of the Lease to CNX at least 90 days prior to filing suit;

11.   Addison's claims should not be dismissed as time-barred;

12. Count III of the Complaint adequately pleads a cause of action for conversion;

13. Count IV of the Complaint should be dismissed because it fails to state a cause of action for negligence;

14. Count V should be dismissed because the Complaint fails to state a separate claim for breach of the implied duty to operate diligently and prudently;

15. Virginia courts would impose a fiduciary duty upon unit operators to properly account for and to pay into escrow the royalties owed, even if those royalties are owed pursuant to a voluntary lease;

16. Count VI of the Complaint adequately pleads a cause of action for breach of fiduciary duties;

17. Count VII of the Complaint should be dismissed because it fails to state a cause of action for unjust enrichment; and

18. The Complaint sufficiently pleads a claim for punitive damages.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Motions in part and deny the Motions in part.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

DATED: This 13th day of May, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE