# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

DORIS BETTY ADDISON, on behalf of
herself and all others similarly situated,

        Plaintiff,

        v.

CNX GAS COMPANY, LLC,

        Defendant.

Case No. 1:10-cv-00065

**FIRST AMENDED CLASS ACTION
COMPLAINT**

**Trial By Jury Requested**

Plaintiff, on behalf of herself and all others similarly situated, states as follows for her

First Amended Complaint against the Defendant, CNX Gas Company, LLC:

## INTRODUCTION

1.    This case is brought on behalf of certain owners and lessors of gas estate interests

in Buchanan, Russell and Tazewell Counties, Virginia ("the Class"). Plaintiff and the Class

Members are the owners of gas estate interests in tracts that are included in coalbed methane gas

drilling units operated by CNX Gas Company, LLC ("CNX"); have each entered into one or more

gas leases under which they leased their respective gas estate interests to CNX; and are entitled to

receive from CNX royalty payments on all gas, including coalbed methane gas, produced by CNX,

their lessee. Plaintiff and the Class Members, as the owners of gas estate interests, have been

identified by CNX -- in CNX's filings with the Virginia Gas and Oil Board ("Board") and/or in

CNX's internal records -- as having claims to the ownership of coalbed methane gas ("CBM") via

their ownership of gas estate interests, that allegedly conflict with the CBM ownership claims of

persons identified by CNX as owning coal estate interests.

2.    For years, CNX, as the operator of CBM wells/units located in the Subject

Virginia Counties, has produced and sold substantial quantities of CBM that are attributable to Plaintiff's and the Class Members' gas estate interests, but CNX has not made royalty payments to Plaintiff and the Class Members nor otherwise properly accounted for same.

3.        CNX has deprived Plaintiff and the Class Members of their royalty payments by, *inter alia*, taking undue and/or unlawful advantage of certain provisions of the Virginia Gas and Oil Act, VA. CODE ANN. § 45.1-361.1, *et seq*. ("the Gas Act"), that permit the production and sale of CBM in the face of "conflicting claims" of CBM ownership. CNX has repeatedly (always) asserted -- and continues to assert -- that there are conflicting CBM ownership claims as between gas estate interest owners (including Plaintiff and the Class Members) on the one hand, and persons identified by CNX as owning coal estate interests on the other hand.

4.        In certain instances, such as when less than 100% of the interests in a proposed CBM unit/well were leased, CNX instituted proceedings before the Board under § 45.1-361.22 of the Gas Act that resulted in the entry of Board orders that force-pooled all interests or estates in CBM drilling units and appointed CNX as operator of the CBM units ("Force-Pooled CBM Units"). CNX thereupon proceeded to produce and sell CBM attributable to Plaintiff's and certain Class Members' gas estate interests in the Force-Pooled CBM Units, but, because of CNX's assertions of "conflicting claims," CNX was obligated, under § 45.1-361.22, to place the royalty payments owed to Plaintiff and the Class Members under their leases into escrow, pending a resolution of the alleged "conflicting claims" of CBM ownership. This money belongs to, but has never been paid to, Plaintiff and the Class Members.

5.        In those instances in which CNX (directly or through a working interest partner) had allegedly acquired gas/CBM leases from all of the gas estate owners and all of the coal estate owners in a potential drilling unit and thereby allegedly held 100% of the working interests in the

potential unit, CNX did not undertake to have a Force-Pooled CBM Unit established through a Board-issued pooling order. Instead, CNX (either alone or with a working interest partner) voluntarily pooled all of its/their gas ownership (leasehold) interests and established a voluntary (not force-pooled) drilling unit ("Voluntary CBM Unit"); and CNX drilled and operated a well or wells in the unit pursuant to permits obtained from the Division of Gas and Oil of Virginia's Department of Mines, Minerals and Energy, and produced and sold CBM from the unit. In those instances in which CNX unilaterally claimed that there were "conflicting claims" of CBM ownership in a Voluntary CBM Unit as between a gas estate owner/lessor (including Plaintiff and certain Class Members) and a coal estate owner/lessor, CNX did not make royalty payments to the "conflicting claimants" and did not pay into the Board's escrow account any of the royalty payments that were attributable to the alleged "conflicting" ownership interests. Instead, CNX internally "suspended" all such royalty payments and kept all the royalties (monies) for its own use and benefit. This money belongs to, but has not been paid to, Plaintiff and the Class Members.

6.      CNX deprived Plaintiff and the Class Members of royalty payments owed to them under their leases by claiming that the coal estate owners identified by CNX own or may own the CBM that CNX produces.

7.      CNX's claims and course of conduct are unfounded and contrary to the law.  The Virginia Supreme Court held eight years ago that CBM "is a distinct mineral estate" from coal, and that landowners (gas estate owners) retain the rights to CBM located on their property when they convey or lease coal rights.  *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 238, 267 Va. 549, 556 (2004).  Virginia's General Assembly has codified the *Ratliff* rule.  VA. CODE ANN. § 45.1-361.21:1:  "A conveyance, reservation, or exception of coal shall not be deemed to include

coalbed methane gas."  Therefore, controlling statutory and common law in Virginia holds that as between (a) a person owning the gas estate interests in a CBM Unit tract on the one hand, and (b) a different person owning the coal estate interests in the tract on the other hand, there is no conflict: the CBM produced from the CBM Unit tract is owned by the gas estate interest owner, not the coal estate interest owner, as a matter of law.

8.      Plaintiff's and the Class Members' royalty payments are in (or are supposed to be in) an escrow account established by the Board.  Plaintiff and the Class Members are entitled to receive their royalty payments from the Board's escrow account (and their royalties held by CNX "in suspense"). Plaintiff requests that the Court enter a declaratory judgment entitling Plaintiff and the Class Members to finally receive the many years' worth of their money that has been held in the Board's escrow account or retained by CNX as a result of ownership conflicts that do not exist.

9.      On behalf of the Class, Plaintiff seeks a judgment establishing and directing, *inter alia*, that:

     a.      Because a conveyance, reservation, or exception of coal does not include CBM as a matter of law, no CBM ownership conflict exists as a matter of law as between (i) a person owning gas estate interests in a CBM Unit tract, and (ii) a different person owning coal estate interests and not gas estate interests in the CBM Unit tract;

     b.      Because a conveyance, reservation, or exception of coal does not include CBM as a matter of law, Plaintiff and the Class Members are entitled to receive the CBM proceeds that are attributable/allocated to those CBM Unit tracts as to which CNX has determined that Plaintiff and the Class Members are gas estate interest owners, but as to which CNX has further asserted that there are conflicting claims of CBM ownership between Plaintiff and the Class Members (as gas estate interest owners/lessors) on the one hand, and  persons identified by CNX as owning coal estate interests and not gas estate interests on the other hand;

    c.          All royalty payments in the Board's escrow account that are attributable to Plaintiff's and the Class Members' respective CBM interests and that have been deposited into the escrow account due to alleged conflicting claims of CBM ownership with persons identified by CNX as owning coal estate interests and not gas interests, must be released from the Board's escrow account and paid over to Plaintiff and the Class Members;

    d.          All royalties attributable to Plaintiff's and the Class Members' CBM interests that were not deposited by CNX into the Board's escrow account but have been "suspended" or otherwise held by CNX and not paid to Plaintiff and the Class Members due to alleged conflicting claims of CBM ownership with persons identified by CNX as owning coal estate interests and not gas interests, must be paid by CNX to Plaintiff and the Class Members; and

    e.          CNX must fully account for the methodology it used to calculate Plaintiff's and the Class Members' CBM royalties (whether in the Board's escrow account or "in suspense"), must prove that it sold the CBM at the highest price obtainable and otherwise calculated the royalties properly, and must pay over to Plaintiff and the Class Members any royalty underpayments.

## **PARTIES**

## **Plaintiff**

10.     Plaintiff, Doris Betty Addison, is an adult resident citizen of the State of Maryland. Plaintiff is the owner of certain lands and gas interests, including CBM, in Buchanan County, Virginia. Plaintiff, as lessor, has leased such gas interests to CNX, as lessee, pursuant to an "Oil, Gas and Coalseam Gas Lease" dated May 2, 1997 (appearing at Book 463, Pages 662-82 in the land records of Buchanan County, Virginia), attached hereto as Exhibit "A."

## **Defendant**

11.     Defendant CNX Gas Company, LLC is a limited liability company organized under the laws of the Commonwealth of Virginia and has its principal office at 1800 Washington Road, Pittsburgh, Pennsylvania 15241-1421. The sole member of CNX Gas Company, LLC, is

CNX Gas Corporation.  CNX Gas Corporation is an out-of-state corporation organized under the laws of the State of Delaware and has its principal office at 1000 Consol Energy Drive, Canonsburg, Pennsylvania.  For the purposes of subject matter jurisdiction under 28 U.S.C. §1332(a), the citizenship of CNX Gas Company, LLC is the citizenship of its sole member, CNX Gas Corporation; therefore, for the purposes of 28 U.S.C. §1332(a), CNX Gas Company, LLC is a citizen of either Delaware (where CNX Gas Corporation was incorporated) or of Pennsylvania (where CNX Gas Corporation has its principal place of business).  Alternatively, for the purposes of subject matter jurisdiction under 28 U.S.C. §1332(d), CNX is a citizen of Virginia, under whose laws it was organized and where it has its principal place of business.

## JURISDICTION

12.    Plaintiff, individually and on behalf of the Class, seeks the issuance of a declaratory judgment pursuant to 28 U.S.C. § 2201(a). Plaintiff, individually and on behalf of the Class, also seeks injunctive relief and/or damages as a result of the matters described hereinafter.

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the named plaintiff, on the one hand, and the defendant, on the other hand, are citizens of different States, and as between the named parties, the amount in controversy exceeds $75,000, exclusive of interest and costs. The amount in controversy includes the amount of Plaintiff's escrowed (past) royalty payments, the amount of future royalty payments Plaintiff will be entitled to receive as a result of the declaratory and/or injunctive relief requested herein, the amount of damages Plaintiff has suffered due to CNX's royalty underpayments, the costs to CNX of providing a proper accounting of its royalty payments,  the costs associated with CNX's modification of its revenue accounting system to ensure the proper payment of royalties in the future, and Plaintiff's claims for punitive damages and attorney's fees.  Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) because the

aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and because one or more members of the Class are citizens of a State different from Defendant CNX Gas Company, LLC. This Court has supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. §1367.

14.     This Court has personal jurisdiction over CNX because, *inter alia*, CNX conducts business in the Commonwealth of Virginia, including, *inter alia*, producing gas in the Commonwealth of Virginia, and entering into agreements for the sale or lease of property and property rights located in the Commonwealth of Virginia.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the acts and transactions complained of herein occurred in this District, and pursuant to 28 U.S.C. §1391(a)(3) because CNX is subject to personal jurisdiction at the time this action is commenced.

## **DEFINITIONS**

16.     The following definitions apply to this Amended Complaint:

    a.     "Board" means the Virginia Gas and Oil Board.

    b.     "CBM" means coalbed methane gas.

    c.     "CBM Unit" is a CBM drilling unit in Virginia operated by CNX.

    d.     "CNX" means CNX Gas Company, LLC, and its predecessors and predecessors-in-interest, including Pocahontas Gas Partnership, Buchanan Production Company, and OXY USA, Inc.

    e.     "DGO" means the Division of Gas and Oil of Virginia's Department of Mines, Minerals and Energy.

    f.     "Including" means "including, without limitation."

g.   "Leases" means all gas leases under which Plaintiff or any Class Member, as the lessor/royalty owner, and CNX, as the lessee/working interest owner, have both owned interests in respect to CBM wells located in any of the Subject Virginia Counties.  The term "Leases" does not include any "lease" which has been "deemed" to be in effect under VA. CODE ANN. §45.1-361.22(6).

h.   "Person" or "persons" means any natural person or any proprietorship, corporation, joint venture, partnership, or other business, legal, or governmental entity or association.

i.   "Subject Virginia Counties" means Buchanan, Russell and Tazewell Counties, Virginia, and all other Virginia Counties in which CNX operates (or has operated) CBM well/units.

j.   This action does not assert any claims Plaintiff and the Class Members may have for the underpayment of royalties on gas produced from conventional gas wells. All such claims are expressly reserved.

## FACTUAL ALLEGATIONS

### Background

17.   This case concerns CBM produced by CNX from certain CBM Units located in the Subject Virginia Counties.

18.   Various persons and entities hold the right to extract coal through coal mining operations in the Subject Virginia Counties.  The coal owners mine and produce coal -- or hold the right to mine and produce coal -- based upon their ownership of the coal estate and/or their leasehold rights to the coal estate.

19.   CBM is a natural gas that resides in coal seams. Coal companies have historically ventilated or otherwise removed CBM from their coal mines as a safety measure, and discharged

the CBM into the atmosphere. However, during the 1970's, technological advances made the commercial production and sale of CBM feasible, and CBM wells began to be drilled in connection with and independent from mining.

20.     In 1990, the Virginia General Assembly enacted the Virginia Gas and Oil Act, VA. CODE ANN. §§ 45.1 - 361.1, *et seq.* (the "Gas Act"). When the Gas Act was enacted, there was uncertainty in Virginia about the <u>legal</u> question of whether CBM produced from a CBM well was owned by (a) the owner(s) of the gas estate on the one hand, or (b) the owner(s) of the coal estate on the other hand. The Gas Act facilitated the drilling and production of CBM, without waiting for this legal question to be judicially or legislatively decided, by making it relatively easy for companies like CNX to force-pool all gas and coal interest owners in a Board-established CBM Unit for the production of CBM. The Gas Act required the operator of the drilled well to place all proceeds from the sale of CBM attributable to "conflicting" CBM ownership interests into escrow until, *inter alia*, "a final decision of a court of competent jurisdiction adjudicating the ownership of coalbed methane gas as between [the conflicting claimants]." *See* VA. CODE ANN. §45.1-361.22(4) and (5).

21.     CBM is defined by the Gas Act as "occluded natural gas produced from coalbeds and rock strata associated therewith." VA. CODE ANN. §45.1-361.1. CNX began producing and selling CBM from the Subject Virginia Counties in the late 1980's. CNX's CBM operations are extensive. CNX currently operates more than 3,200 CBM wells in the Subject Virginia Counties, resulting in the annual production of millions of Mcf of CBM that has been marketed and sold by CNX.

22.     More than 500 of the CBM Units operated by CNX were established by "force-pooling" orders issued by the Board under §45.1-361.22 of the Gas Act. Each such pooling order

Case 1:10-cv-00065-JPJ-PMS Document 96-1 Filed 06/15/12 Page 10 of 40 Pageid#: 870

defines the drilling unit and the location of the CBM well(s) within the unit; lists the separate tracts (or parcels) comprising the unit and the acreage in each tract/parcel; identifies the gas estate owner(s) and the coal estate owner(s) for each tract and the portion of the unit assigned to each owner's interest; identifies those claimants whose interests are subject to escrow; pools all of the interests and estates in and to the gas in the drilling unit; and designates CNX as the unit operator authorized to drill and operate the well(s), subject to permit provisions in the Gas Act and to applicable administrative regulations and field rules, as amended from time-to- time.

23. The other CBM Units operated by CNX include lands in which CNX (directly or through a working interest partner) had, prior to the establishment of the Unit, acquired gas/CBM leases from all of the gas estate owners in the Unit and all of the coal estate owners in the Unit. Such Units were not established by "force-pooling" orders issued by the Board but were established voluntarily by CNX (either alone or with a working interest partner), as the lessee of all the gas/CBM interests in the Unit and the owner of 100% of the working interests in the Unit. As to these "voluntary CBM Units," CNX (alone or with a working interest partner) voluntarily pooled all of its/their gas ownership (leasehold) interests in the Unit and CNX obtained permission from the DGO or the Board to drill and operate a well(s) in the Unit for the production of CBM.

24. In most instances, a CBM Unit is comprised of two or more separately owned tracts. The CBM produced by CNX from a CBM Unit is allocated among the separate tracts on a proportionate acreage basis, *i.e.*, the portion of CBM production allocated to a tract is in the same proportion which the tract's acreage bears to the total acreage in the CBM Unit. (For example, if a CBM Unit is 100 acres and is comprised of one tract (Tract 1) containing 60 acres, another tract (Tract 2) containing 30 acres, and another tract (Tract 3) containing 10 acres, then

the CBM produced from the CBM Unit's well(s) would be allocated among the tracts as follows: Tract 1 – 60%; Tract 2 – 30%; and Tract 3 – 10%.) The CBM production allocated to a particular tract is shared among the tract's gas owners on a proportionate ownership basis.

### CNX's Force-Pooled Units

25.    Beginning in the early 1990's, whenever CNX prepared an application to the Board for the establishment of a force-pooled CBM Unit, CNX -- as the applicant and proposed operator -- conducted extensive title searches to identify all of the potential owners of an interest in the CBM underlying each tract in the proposed CBM Unit, including the identity of the gas estate interest owners and the coal estate interest owners in each CBM Unit tract. After its title searches were complete, CNX filed a sworn application with the Board requesting that the Board enter an order pooling all interests and estates in the CBM Unit. CNX included in its application a list or schedule that separately identified (a) the gas estate interest owner(s) in each CBM Unit tract, and (b) the coal estate interest owner(s) in the tract. When it filed its application for a pooling order, CNX simultaneously sent (or was supposed to send) a copy of its application to all of the listed interest owners pursuant to §45.1-361.22(1) of the Gas Act.

26.    As to each tract in which the owner of the gas estate is different from the owner of the coal estate, CNX consistently (always) represented to the Board in its sworn applications and sworn testimony that a "conflicting claim" to the ownership of CBM existed as between the gas estate interest owner(s) on the one hand, and the coal estate interest owner(s) on the other hand. The conflicting claim arose from the legal question of whether the CBM produced from a CBM unit is owned by (a) the gas estate owner, or (b) the coal estate owner. (In many of CNX's CBM Unit tracts, the same person(s) owns both the gas estate and the coal estate in the tract, in which event no conflicting claim of CBM ownership was asserted.) CNX further stated under oath that

an escrow account would need to be established for the proceeds attributed to the CBM Unit tract(s) in which CNX asserted that a CBM ownership conflict existed.

27.     Following the approval of CNX's applications by the Board, CNX submitted pooling orders to the DGO for the Chairman of the Board to sign and for the Director of the DGO to record with the Clerk of the Court in the county in which the CBM Unit was located. Each of the pooling orders and supplemental pooling orders issued by the Board for CNX's force-pooled CBM Units incorporated CNX's ownership lists/schedules and adopted CNX's assertions that "conflicting claims" of CBM ownership existed between gas estate owners on the one hand, and coal estate owners on the other hand.

28.     The Board does not (as CNX and the Board agree) possess the legal authority to challenge a CBM operator's assertion of conflicting claims of CBM ownership nor possess the legal authority to adjudicate CBM ownership or otherwise resolve any CBM ownership conflicts that are asserted by the operator.

29.     The application attached hereto as Exhibit "B" is a representative sample of the pooling applications that have been filed by CNX with the Board; and the Board order attached hereto as Exhibit "C" is a representative sample of the pooling orders that have been entered by the Board pursuant to CNX's applications. The attached application and attached order pertain to Unit No. FF-23 (Board Docket No. 99-0216-0709). The documents list, for each tract, the names of the persons owning interest in the tract (*see* page 1 of Exhibit A to CNX's application); and reflect, for example, the persons holding "coal fee ownership" interests and the persons holding "oil and gas fee ownership" interests in Tracts 2A and 2B are "conflicting owners/claimants" (*see* paragraph 3 of the attached Board order and also Exhibit "E" to the order).

30.     After obtaining the necessary permits and/or orders from the Board, CNX, as the operator of the CBM Units, completed, operated, and produced each CBM Unit/well and took possession of and sold the CBM it produced. The CBM sales proceeds attributable to the "conflicting claims" of the gas estate owners (including Plaintiff and certain Class Members) and coal estate owners were (or were supposed to have been, but have not been) deposited by CNX into a Board-established escrow account per the provisions of VA. CODE ANN. §45.1-361.22.

31.     Section §45.1-361.22(5) of the Gas Act currently provides that "[t]he Board shall order payment of principal and accrued interest, less escrow account fees, from the escrow account to conflicting claimants only after (i) a final decision of a court of competent jurisdiction adjudicating the ownership of coalbed methane gas as between them; (ii) a determination reached by an arbitrator pursuant to §45.1-361.22:1; or (iii) an agreement among all claimants owning conflicting estates in the tract in question or any undivided interest therein."

### CNX's Voluntary CBM Units

32.     CNX also conducted title searches and prepared ownership lists/schedules for its voluntary CBM Units. In those instances in which CNX claimed that there were "conflicting claims" of CBM ownership in a Voluntary CBM Unit as between a gas estate owner/lessor (including Plaintiff and certain Class Members) and a coal estate owner/lessor, CNX did not make royalty payments to the "conflicting claimants" or pay royalties into the Board's escrow account but instead internally "suspended" the royalties. Upon information and belief, the suspended royalties were not segregated, deposited into, and held in an escrow or other specially designated account, but were instead commingled with CNX's other monies and used by CNX for its own corporate purposes, with the amount of the "suspended" royalties presumably carried as a "liability" or "contingent liability" on CNX's financial books and records. This money

belongs to, but has not been paid to, Plaintiff and the Class Members. In addition to paying the principal amount of such royalties to Plaintiff and the Class Members and prejudgment interest thereon at the maximum lawful rate, CNX should be required to disgorge all ill-gotten gains CNX realized through its wrongful use of such royalties, including equitable interest on such royalties calculated at a rate equal to CNX's return on equity for its Virginia operations during each of the years in question (which returns are believed to approach or exceed 20%), and including the value of all other monetary or other economic advantages, profits, and benefits CNX realized through its use of such royalties.

### The Illusory CBM Ownership Conflict

33.     Plaintiff and the Class Members are the persons and entities who have been identified by CNX in its Board filings (as to Force-Pooled CBM Units) or in its internal records (as to Voluntary CBM Units) as the owners of gas estate interests in a CBM Unit tract who have leased their interests (to CNX), but whose ownership of the CBM/CBM proceeds allocated to that tract has been further identified by CNX as being in "conflict" with persons identified by CNX as owning coal estate interests (and not gas estate interests) in the tract. According to CNX, the coal estate owners have claims to the ownership of CBM that conflict with Plaintiff and the Class Members, who own the gas estate interests in the tracts. Because of CNX's assertion of such ownership conflicts, the royalty payments owed by CNX to Plaintiff and the Class Members have not been released from escrow or suspense or otherwise paid over to Plaintiff and the Class Members.

34.     Through this action, Plaintiff requests, on behalf of herself and the Class, that the Court enter a judgment declaring that the CBM ownership conflicts asserted by CNX do not exist and that Plaintiff and the Class Members are entitled to receive all royalties that have not

been paid to them due to CNX's assertions of such conflicting claims. Such a declaration is a straightforward legal issue.

35.     As noted above, when the Gas Act was enacted in 1990 there was uncertainty in Virginia about the <u>legal</u> question of whether CBM produced from a CBM Unit was owned by (a) the owners of the gas estate on the one hand, or (b) the owners of the coal estate on the other hand. The answer to that <u>legal</u> question was eventually provided by both the Virginia Supreme Court and the Virginia General Assembly.

36.     In March 2004, the Virginia Supreme Court rejected the defendant coal owner's assertion "that it, as the owner of the coal estate, owns the CBM"; held that CBM is a gas and "is a distinct mineral estate" from coal; and held that landowners (gas estate owners) retain the rights to CBM located on their property when they convey or lease coal rights. *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 235 and 238 (Va. 2004).

37.     In April 2010, the Virginia General Assembly codified the holding of *Ratliff* through its enactment of VA. CODE ANN. §45.1-361.21:1, which provides as follows:

> A conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas. Nothing in this section shall affect a coal operator's right to vent coalbed methane gas for safety purposes or release coalbed methane gas in connection with mining operations. The provisions of this section shall not affect any settlement of any dispute, or any judgment or governmental order, as to the ownership or development of coalbed methane gas made or entered prior to the enactment of this provision.

VA. CODE ANN. §45.1-361.21:1. This statute was enacted April 13, 2010. *See* Acts 2010, cc. 730 & 762, cl. 3.

38.     *Ratliff* and §45.1-361.22:1 established that a conveyance, reservation, or exception of coal does not include CBM. Therefore, if a person owns coal estate interests and not gas estate interests in a CBM unit, that person is <u>not</u> the owner of the CBM produced from the

Case 1:10-cv-00065-JPJ-PMS Document 113 Filed 08/01/12 Page 16 of 40 Pageid#: 1393
Case 1:10-cv-00065-JPJ-PMS Document 96-1 Filed 06/15/12 Page 16 of 40 Pageid#:
876

CBM unit, as a matter of law. The CBM is, rather, owned by the CBM unit's gas estate owners. (Colloquially speaking, *Ratliff* and §45.1-361.22:1 stand for the basic premise that "gas (including CBM) is gas, and coal is coal.")

39.     A person may, of course, own <u>both</u> the gas estate in a CBM unit tract <u>and</u> the coal estate in the tract, in which event the person would own the CBM produced from the tract -- but that ownership would be premised on her gas estate ownership, not her coal estate ownership. This case concerns, however, only those situations in which the gas estate and the coal estate have been severed, with one person (or group of persons) owning the gas estate, and a different person (or group of persons) owning the coal estate.

40.     There are no material facts in dispute. CNX has asserted the existence of "conflicting" CBM ownership between gas estate owners on the one hand, and the owners of the coal estate interests (and not gas estate interests) on the other hand; but <u>no ownership "conflict" exists</u>. Under *Ratliff* and/or §45.1-361.21:1, a person owning coal estate interests and not gas estate interests is <u>not</u> the owner of CBM produced from a CBM unit, as a matter of law. In other words, as between a person owning the gas estate in a CBM unit tract and a different person owning the coal estate and not gas interests in that same tract, the CBM produced from the tract is owned by the person owning the gas estate, as a matter of law.

41.     Plaintiff requests, therefore, that this Court enter a judgment declaring, based on *Ratliff* and/or §45.1-361.21:1, that as a matter of law, Plaintiff and the Class Members are entitled to receive the CBM proceeds that are attributable/allocated to their respective interests in those CBM Unit tracts as to which CNX has determined that Plaintiff and the Class Members are gas estate interest owners, but as to which CNX has asserted that there are conflicting claims of CBM ownership between Plaintiff and the Class Members (as gas estate interest owners) on the

one hand, and persons identified by CNX as owning coal estate interests and not gas estate interests on the other hand.

42.     Under VA. CODE ANN. §45.1-361.22(5)(a), Plaintiff and the Class Members will be entitled to receive their royalty payments from the Board's escrow account (and their royalties held by CNX "in suspense") upon the entry of a "final decision of a court of competent jurisdiction adjudicating the ownership of coalbed methane gas as between [the conflicting claimants]." In the unique context of this case, such an adjudication of CBM ownership can properly be obtained through the requested declaration that the CBM ownership "conflict" asserted by CNX does not exist as a matter of law.

43.     The requested adjudication of ownership does not involve factual issues and disputes (and is not an adjudication of ownership "as against the world"), but is a narrow adjudication that (a) has been framed by and will be limited to CNX's ownership lists/schedules, and (b) hinges on the simple, straightforward application of a dispositive legal principle to CNX's ownership lists/schedules. CNX conducted title examinations for each and every one of its CBM Unit tracts and prepared lists/schedules identifying all of the interest owners and the nature of their respective interests (gas or coal). This is, therefore, not a case in which Plaintiff and the Class Members must submit "chains of title" and "re-establish" that they own gas estate interests and that the "conflicting" coal estate owners own coal estate interests and not gas estate interests. Those determinations of gas and coal ownership have already been made by CNX, as the operator of the CBM Units. Instead, this case concerns only the alleged "conflict," i.e., the legal question of whether the CBM produced by CNX from its CBM Units is owned by the persons identified by CNX as owning gas estate interests or by the persons identified by CNX as owning coal estate interests (and not gas interests). The requested declaration -- that the CBM

ownership "conflict" asserted by CNX does not exist -- will and should, in these unique circumstances, constitute an adjudication of CBM ownership sufficient to enable Plaintiff and the Class Members to receive their royalty payments pursuant to Section 45.1-351.22(5)(a).

44.     In addition, the historical assertion of so-called "conflicting claims" of CBM ownership between gas estate owners and coal estate owners occurred because CNX -- as the CBM Unit operator -- asserted the existence of such conflicts. Indeed, as to the force-pooled CBM Units, the Gas Act contemplates that the presence of CBM ownership "conflicts" would be recognized by the Board upon the CBM operator's (CNX's) assertion of a conflict in its pooling application; and the Board has taken the position that it does not possess the legal authority to challenge, adjudicate, or otherwise resolve any CBM ownership conflicts that are asserted by the operator. Because of this -- and because the asserted "conflicts" at issue in this case are not fact questions but are legal questions unanswered when the Gas Act was passed but now answered by *Ratliff* and §45.1-361.22:1 -- the relief Plaintiff seeks for herself and the Class Members can properly and should be provided as a matter of law through the entry of a declaratory judgment and/or injunctive relief against the operator (CNX) alone. As the presence of a conflict may be established by the CBM operator alone, so may the absence of a conflict be established through the entry of a declaratory judgment against the operator alone.

45.     Plaintiff requests, therefore, that this Court specifically declare that Plaintiff and the Class Members are entitled to receive from the Board's escrow account and/or from CNX directly, all royalty payments attributable to their respective gas estate interests as identified by CNX in its ownership lists/schedules; declare that its judgment is and shall in all respects be treated as sufficient to enable Plaintiff and the Class Members to obtain all of the royalties that are attributable to their respective gas estate interests in the subject CBM Unit tracts, including

all royalties that were (or were supposed to have been, but have not been) deposited by CNX into the Board-established escrow account or that were suspended by CNX; and declare that its judgment shall be treated as an adjudication of ownership sufficient for the release of escrowed monies to the Plaintiff and Class Members pursuant to §45.1-361.22(5)(i) of the Gas Act.

46.     The Court should also direct CNX to, in consultation with Plaintiff's counsel, present the Court's judgment to the Board and take all necessary steps to obtain the release of such royalty payments from the Board's escrow account, plus all interest accrued (or which could or should have accrued) thereon, and to have such monies paid over to Plaintiff and the Class Members; and the Court should direct CNX to release and pay over to Plaintiff and the Class Members all royalties attributable to their respective interests that were placed "in suspense" or otherwise retained by CNX and withheld from Plaintiff and the Class Members, plus prejudgment and equitable interest thereon.

47.     Plaintiff also requests that this Court enter a judgment declaring that Plaintiff and the Class Members are, as to future production, entitled to receive royalty payments directly from CNX in accordance with their Leases and that CNX shall not deposit any such royalty payments into the Board's escrow account nor hold any such payments "in suspense" due to the alleged (but non-existent) CBM ownership "conflicts" with coal estate owners.

48.     The coal estate owners identified by CNX as so-called "conflicting claimants" with Plaintiff and the Class Members are neither necessary nor indispensable parties to this action. Virginia law, as established in *Ratliff* and/or §45.1-361.21:1, provides that such coal estate owners -- as the owners of coal estate interests and not gas estate interests in the subject tracts -- do not have any legally protected interests in the subject CBM production as a matter of law and do not have a legitimate claim to the CBM production. In other words, *Ratliff* and §45.1-

361.21:1 established and confirmed that no cognizable "conflicting claim" of CBM ownership <u>even</u> <u>exists</u> between a person owning the gas estate and a different person owning coal estate interests and not gas estate interests: as a matter of law, as between a person owning the gas estate and a person owning coal estate interests and not gas estate interests, the CBM produced from a CBM Unit formed pursuant to the Gas Act is owned by the person owning the gas estate and not by the owner of coal estate interests.

49.     The requested relief also will have no effect on the separate rights coal estate owners possess under the law as the owners of the coal estate. For example, §45.1-361.21:1 preserves "a coal operator's right to vent coalbed methane gas for safety purposes or release coalbed methane gas in connection with mining operations." In addition, under the Gas Act, a permit must be obtained to drill a CBM well or convert a methane drainage borehole into a CBM well, and such a permit may not be issued unless the permit applicant (i.e., the proposed operator of the proposed CBM Unit/well) has obtained a signed consent to stimulate the well from the coal operator(s) as provided in VA. CODE ANN. §45.1-361.29(F). Such permits and consents have already been obtained by CNX for its past and current CBM Units, and CNX will have to comply with the Gas Act for its future CBM wells, if any.

50.     Furthermore, the release of escrowed proceeds to the gas estate interest owners can be resolved properly and most efficiently through the entry of a judgment against CNX alone. There are currently more than 5,000 CBM units/wells operating and producing CBM in Virginia. Discovery obtained and further investigation by Plaintiff's counsel have revealed that: (a) there are more than 500 CBM Units operated by CNX that were established by pooling orders issued by the Board, and there are hundreds of "conflicting" coal estate owners in those force-pooled CBM Units; (b) there are more than 1,000 CBM Units operated and formed by CNX as

"voluntary" (not force-pooled) CBM Units, and there will likely be many hundreds of coal estate owners who are "conflicting" coal estate owners in CNX's voluntary CBM Units; and (c) there are many hundreds of coal estate owners who are "conflicting" coal estate owners in CBM units operated by other CBM operators in Virginia. Plaintiff previously contemplated naming all of the "conflicting" coal estate owners in CNX's CBM Units as defendants in this action, but formally naming each and every coal estate owner in this proceeding (and in similar ownership class actions against other CBM operators) will impose unnecessary administrative burdens and expenses on this Court and on the parties; and the presence of those coal estate owners as named defendants in this proceeding (and in similar ownership class actions) would not alter the dispositive legal principles established in *Ratliff* and §45.1-361.21:1).

51.     This Court should take a practical, pragmatic approach to the resolution of the sweeping and widespread difficulties spawned by the Gas Act's escrow provisions, which were enacted prior to the judicial (*Ratliff*) and legislative (§45.1-361.21:1) pronouncements of Virginia law on the respective CBM rights of gas estate owners and coal estate owners. There are significant and compelling public interests at issue. If *Ratliff* and/or §45.1-361.21:1 had been in place at the time of the Gas Act's passage, no conflicting claims of CBM ownership would have (or could have legitimately) been asserted, and the Gas Act's unique escrow provision would not have even been necessary. While well-intentioned at its inception, the Gas Act, as written and/or as applied by CNX, has resulted in many thousands of gas estate owners being deprived of CBM production proceeds which they own and are entitled to receive. Their proceeds are in escrow (and/or in internal "suspense" accounts) based upon asserted conflicts of CBM ownership by CNX that do not even exist as a matter of law. The obstacles faced by and frustrations of the people of Southwest Virginia regarding the deprivation of their CBM proceeds -- monies many

of them desperately need -- have been well documented in, *inter alia*, the Pulitzer Prize-winning series of articles authored by Daniel Gilbert and published in the *Bristol Herald Courier*. By entry of the requested judgment against CNX alone, this Court can properly, promptly and efficiently remedy the past injustices that have been imposed upon many thousands of Southwest Virginia gas estate owners and ensure that future CBM production proceeds are immediately paid to and no longer withheld from those gas estate owners. While this Court may consider providing the coal estate owners in CNX's CBM Units with notice of this proceeding and an opportunity to intervene should they desire to do so, using the notice methods and provisions set out in §45.1-361.19 of the Gas Act (the same methods and provisions used by CNX in bringing the proceedings resulting in the aforesaid claims of "conflict" for its Force-Pooled CBM Units, or may consider establishing a defendant class of coal estate owners under Rule 23 of the Federal Rules of Civil Procedure, the required joinder of hundreds of coal estate owners in this action as named defendants is burdensome and simply not necessary.

## **Further Injunctive Relief**

52.     *Ratliff* and §45.1-361.21:1 are controlling Virginia law. Nevertheless, CNX has ignored *Ratliff* and §45.1-361.21:1 and continues to assert in its establishment of new CBM Units that CBM ownership conflicts <u>always</u> exist between gas estate owners on the one hand and coal estate owners on the other hand. CNX has thereby improperly caused CBM production proceeds owed to and owned by gas estate owners to be escrowed in the Board's escrow account or to be "suspended" and held by CNX. CNX continues to improperly assert such (nonexistent) conflicts for its own selfish purposes. Specifically, whenever CNX asserts the existence of an ownership conflict, the proceeds that would otherwise be payable to the gas estate owner are

placed in the Board escrow account or held by CNX in suspense. This creates substantial, improper advantages for CNX.

53.      One improper advantage is that for CNX's voluntary units, claiming a "conflict" allows CNX to keep the gas estate owners' royalties in suspense for years, indefinitely, and allows CNX to use those monies to fund CNX's operations. Such conduct results in CNX converting the royalties to its own use and improperly using those funds as "free loans," which CNX contends need not be "repaid" until a "judicial determination of ownership" is obtained by the gas estate owner or a "split" agreement is reached between the gas estate owner and the coal estate owner.

54.      Another improper advantage flows to CNX when it proclaims that the coal estate interest owner (virtually always CNX's lessor) has a claim to the ownership of the CBM. The assertion of such a claim by CNX enables CNX to (a) force pool interests in a CBM Unit based solely upon leases it has obtained from "coal estate only" owners, i.e., without CNX owning any gas interests/gas leases whatsoever, and (b) utilize the Gas Act's "deemed lease" provisions to (improperly) obtain a leasehold interest in the gas estate, "game the system," and leverage itself into a gas interest ownership position it may not otherwise be able to obtain. By continuing to improperly assert that CBM ownership conflicts exist between gas estate interest owners and coal estate interest owners, CNX is manipulating and abusing the Gas Act to enable it to drill CBM wells under false claims of ownership and obtain "deemed leases" for gas estate owners, including without notice and/or payment to the rightful CBM owners.

55.      CNX's actions as described above constitute a conversion of the gas estate owners' interests and CBM production proceeds. CNX will continue to engage in such conduct unless and until it is enjoined by this Court from doing so. Plaintiff therefore requests, based on

*Ratliff* and §45.1-361.21:1, that this Court issue a judgment directing CNX to cease and desist from (falsely) asserting the existence of CBM ownership conflicts between gas estate interest owners on the one hand, and coal estate interest owners on the other hand. Specifically, in those situations in which a person owns coal estate interests and no gas estate interests in a proposed CBM Unit tract, then CNX should be enjoined from asserting that the coal estate interest owner has a conflicting claim of CBM ownership *vis-à-vis* the gas estate interest owner(s) in the tract.

### CNX's Escrow Account Obligations

56.     CNX took possession of and sold the CBM Unit production attributable to the leasehold interests it obtained from the Class Members under the Leases.

57.     To the extent CNX has deposited into the Board's escrow account royalty payments attributable to Plaintiff's and the Class Members' respective interests under the Leases, CNX should be required, via the entry of a judgment, to take all necessary steps to obtain the release of such escrowed royalty payments to Plaintiff and the Class Members, including all escrow account interest accrued thereon.  In addition, to the extent CNX has failed to properly deposit royalty payments into the Board's escrow account, CNX should be required, via the entry of a judgment, to pay to Plaintiff and the Class Members an amount of money equal to the total amount of royalty payments CNX should have deposited, but failed to deposit, plus prejudgment and equitable interest thereon, and plus the value of any monetary or other economic advantages, profits, and benefits, including attendant tax credits, that CNX realized through its receipt, retention and use of the royalties CNX failed to deposit.

58.     To the extent CNX has held "in suspense" or otherwise retained royalties attributable to Plaintiff's and the Class Members' respective interests, CNX should be required, via the entry of a judgment, to pay to Plaintiff and the Class Members an amount of money equal

to the total amount of such royalties, plus prejudgment and equitable interest thereon, and plus the value of any monetary or other economic advantages, profits, and benefits, including attendant tax credits, that CNX realized through its receipt, retention and use of such royalties.

59.     Plaintiff alleges that there are certain instances in which CNX has wholly failed to deposit Plaintiff's and the Class Members' royalty payments into escrow and has, instead, retained such royalty payments for its own use and benefit.  Further, Plaintiff alleges that there are certain instances where the Lease royalties deposited by CNX into escrow or held by CNX in suspense were calculated improperly and were insufficient.  For example, in marketing the CBM it produced, CNX was obligated, by virtue of its undertakings and/or as the CBM Unit operator, to act as a reasonably prudent operator and to market and sell the CBM at the highest price obtainable.  However, in calculating and depositing into escrow or suspending its Lease royalty payments, CNX has, upon information and belief, improperly used gas prices that were less than the highest price obtainable, including prices from the sale of gas by CNX to affiliates on a non-arm's-length basis; and improperly used gas prices that were less than the actual proceeds received by CNX, including prices and proceeds CNX realized/received through swap contracts and other hedging and marketing activities.  Further, in calculating and depositing into escrow or suspending its Lease royalty payments, CNX has not paid royalties on all of the volumes of CBM it produced, and CNX has deducted post-wellhead costs that were improper and/or excessive, including costs in excess of actual, direct, and/or reasonable costs and including costs that, at times, exceeded the sales price of the CBM.

60.     CNX's deductions of improper and excessive post-wellhead costs were intentional, willful, and wanton and in utter disregard of the rights of Plaintiff and the Class Members.  For example, in November of 1999, a federal jury returned a verdict against CNX in

*Levisa Coal Co., et al., v. Consolidated Coal Co., et al.*, Civil Action No. 1:97-cv-00117 on the docket of the United States District Court for the Western District of Virginia, Abingdon Division. *Levisa Coal* concerned the costs deducted by CNX in calculating and paying gas lease royalty payments to the *Levisa Coal* plaintiffs on gas produced by CNX in Virginia. The jury awarded damages in excess of $10 million to the *Levisa Coal* plaintiffs for deductions taken by CNX in excess of reasonable actual costs of gathering, compression and transportation. The jury verdict was upheld on appeal to the United States Court of Appeals for the Fourth Circuit. CNX thereafter changed its royalty calculation methodology for the *Levisa Coal* plaintiffs and, consistent with the jury's findings, reduced the costs it had been charging to the *Levisa Coal* plaintiffs. Nevertheless, in calculating and depositing into escrow or suspending Plaintiff's and the Class Members' royalty payments, CNX has deducted and intentionally continued to deduct costs that were found by the federal jury in *Levisa Coal* to be improper and excessive.

61.     Plaintiff and the Class Members demand and are entitled to receive a full and accurate disclosure and an accounting of all such matters from which the full extent of CNX's wrongful acts and omissions and Plaintiff's and the Class Members' resulting damages may be revealed.

62.     The full extent of CNX's acts and omissions in regard to its payments (or non-payments) of Lease royalties is not currently known, and can only be determined adequately through an accounting and investigation of CNX's books, records, and practices, including, without limitation, disclosure of detailed information relating to the handling and marketing of CBM produced by CNX and all other matters relating to CNX's calculation of its Lease royalty payments and obligations.

63.    Plaintiff and the Class Members are entitled to recover from CNX all amounts that are shown to be owed by CNX as the result of such accounting, including prejudgment and equitable interest thereon at the maximum lawful rate.

## PUNITIVE DAMAGES

64.    The acts and omissions of CNX as set forth hereinabove were willful and wanton and in utter disregard of the rights of Plaintiff and the Class Members, or were done with reckless disregard for their rights, thus entitling Plaintiff and the Class Members to punitive damages against CNX in an amount to be determined by the jury.

## COURT-APPOINTED EXPERT

65.    Plaintiff requests that the Court consider the appointment of an expert under Rule 706, FED. R. EVID., to assist the Court in the resolution of the accounting issues due to be resolved through this action, with all such costs for same, including the expert's compensation, to be paid by CNX.

## CLASS ACTION ALLEGATIONS

66.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and the Class, defined as follows:

> Each person who has been identified by CNX as the owner and lessor of gas estate interests in a tract included in a coalbed methane gas unit operated by CNX in any of the Subject Virginia Counties, and whose ownership of the coalbed methane gas attributable to that tract has been further identified by CNX as being in conflict with a person(s) identified by CNX as owning coal estate interests and not gas estate interests in the tract.

> The Class excludes (a) the Defendant, and (b) any person who serves as a judge in this civil action and his/her spouse. The Class also excludes each gas estate owner who has entered a written agreement with a purported coal estate owner settling alleged conflicting claims of CBM ownership between them; provided, however, that this exclusion does not extend to those interests or rights of any such gas estate interest owner regarding lands, CBM

units, and/or CBM royalties that are not expressly covered and settled by any such settlement agreement.

67. Plaintiff reserves the right to redefine the Class and/or establish subclasses as may be appropriate.

68. The members of the Class are so numerous that joinder of all members is impractical. Disposition of the claims in this action will provide substantial benefits to both the parties and the Court.

69. Although the precise number and identity of the Class Members can be ascertained from the books and records of Defendant, Plaintiff alleges, upon information and belief, that the Class exceeds 100 members.

70. There are questions of law and/or fact common to the Class that predominate over any questions that affect only individual Class Members. These questions include, but are not limited to, the following:

a. Whether as a matter of law, a conveyance, reservation, or exception of coal does not include CBM;

b. Whether as a matter of law, no CBM ownership conflict exists as between a person owning gas estate interests in a CBM unit tract and a different person owning coal estate interests and not gas estate interests in the tract.

c. Whether as between (a) a person(s) owning gas estate interests in a CBM unit tract, and (b) a different person(s) owning coal estate interests and not gas estate interests in the CBM unit tract, the CBM produced from the CBM unit tract is owned by the gas estate interest owner and not by the coal estate interest owner, as a matter of law.

d. Whether CNX has failed to account and/or properly account to Plaintiff and the Class Members for royalties owed to Plaintiff and the Class Members under the Leases;

   e.  Whether the gas prices used by CNX to calculate royalty payments for Plaintiff and the Class Members under the Leases were less than the best gas prices obtainable for such CBM;

   f.  Whether the gas prices and proceeds CNX realized/received through its hedging and marketing activities should have been included within CNX's proceeds for royalty calculation purposes;

   g.  Whether the gas volumes used by CNX to calculate its royalty payments were less than the gas volumes that were produced and/or sold by CNX;

   h.  Whether the costs deducted by CNX in calculating royalty payments for Plaintiff and the Class Members under the Leases were improper and/or excessive;

   i.  Whether CNX has converted Plaintiff's and the Class Members' Lease royalties by, *inter alia*, retaining such royalties for its own use and benefit;

   j.  Whether CNX has violated its duty to properly account to Plaintiff and the Class Members on CBM produced in the Subject Virginia Counties as a result of the acts and omissions described herein; and

   k.  Whether punitive damages can and should be imposed on CNX by virtue of CNX's wrongful acts and omissions.

   These questions are capable of class wide resolution, and answering them will resolve issues central to the validity of the claims.

  71.  CNX has acted on grounds that apply generally to Plaintiff and all Class Members, so that declaratory and injunctive relief is necessary and appropriate for the Class as a whole, consistent with Rule 23(b)(2) of the Federal Rules of Civil Procedure.

72. The critical remedy that Plaintiff seeks is primarily declaratory and injunctive. The monetary relief that Plaintiff seeks is secondary to, and flows from, the declaratory/ injunctive request.

73. The common pattern of conduct by Defendant (along with the common theories for redressing the misconduct) supports the maintenance of this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

74. Plaintiff and the Class Members share a well-defined community of interest; many common questions of law and fact are common to Plaintiff and all Class Members.

75. Plaintiff's claims are typical of the claims of the Class, and Plaintiff has the same interests as the other members of the Class.

76. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

77. Plaintiff is committed to prosecuting this action and has retained experienced and competent counsel. Plaintiff's counsel are experienced in class actions, including actions that involve breaches of oil and gas leases, and underpayments of gas royalties. Neither Plaintiff nor Plaintiff's counsel have any interests that might cause them not to vigorously pursue this action.

78. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, many members of the Class will find the litigation costs regarding their claims so prohibitive that they effectively would be unable to seek any redress at law. Because of the size of the individual Class Members' claims, many could not afford to seek legal redress or the relief requested for the wrongs set forth herein. Absent a class action, Defendant will continue the improper and wrongful conduct herein described, the Class

Members will continue to be damaged by Defendant's wrongful conduct, and Defendant's violations of the law will continue without remedy.

## COUNT I

## DECLARATORY JUDGMENT

79.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above numbered paragraphs.

80.     Plaintiff requests that the Court issue a judgment pursuant to 28 U.S.C. §2201, and declare and direct that:

      a.    Because a conveyance, reservation, or exception of coal does not include CBM as a matter of law, no CBM ownership conflict exists as a matter of law as between (i) a person owning gas estate interests in a CBM Unit tract, and (ii) a different person owning coal estate interests and not gas estate interests in the CBM Unit tract;

      b.    Because a conveyance, reservation, or exception of coal does not include CBM as a matter of law, Plaintiff and the Class Members are entitled to receive the CBM proceeds that are attributable/allocated to those CBM Unit tracts as to which CNX has determined that Plaintiff and the Class Members are gas estate interests owners, but as to which CNX has further asserted that there are conflicting claims of CBM ownership between Plaintiff and the Class Members (as gas estate owners/lessors) on the one hand, and persons identified by CNX as owning coal estate interests and not gas estate interests on the other hand;

      c.    All royalty payments in the Board's escrow account that are attributable to Plaintiff's and the Class Members' respective CBM interests and that have been deposited into the escrow account due to alleged conflicting claims of CBM ownership with persons identified by CNX as owning coal estate interests and not gas interest, must be released from the Board's escrow account and paid over to Plaintiff and the Class Members;

      d.    All royalties attributable to Plaintiff's and the Class Members' CBM interests that were not deposited by CNX into the Board's escrow account but have been "suspended"

or otherwise held by CNX and not paid to Plaintiff and the Class Members due to alleged conflicting claims of CBM ownership with persons identified by CNX as owning coal estate interests and not gas interests, must be paid by CNX to Plaintiff and the Class Members; and

e.   CNX must fully account for the methodology it used to calculate Plaintiff's and the Class Members' CBM royalties (whether in the Board's escrow account or "in suspense"), must prove that it sold the CBM at the highest price obtainable and otherwise calculated the royalties properly, and must pay over to Plaintiff and the Class Members any royalty underpayments.

## COUNT II

## BREACH OF CONTRACT

81.   Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

82.   The above-described conduct constitutes violations and breaches of the obligations, expressed and/or implied, which CNX owes to Plaintiff and the Class Members under their Leases.

83.   Plaintiff and the Class Members have been damaged as a result thereof and are entitled to recover their actual damages from CNX, statutory or other interest at the maximum lawful rate, and any and all other relief deemed appropriate by the Court.

## COUNT III

## CONVERSION

84.   Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

85.   CNX, as the Board-appointed operator of the CBM Units and/or as the lessee under the Leases, had the lawful authority to produce the CBM that was attributable to Plaintiff's and the Class Members' interests.  However, once the CBM was produced, CNX was obligated

to properly sell the CBM and remit Lease royalties for same to Plaintiff and the Class Members. CNX failed to do this, and instead took wrongful possession of and retained Lease royalties for its own account, use, and benefit.

86.     CNX's conduct constitutes an unlawful conversion of the royalties that are attributable to the Plaintiff's and Class Members' interests under the Leases. Plaintiff and the Class Members are entitled to receive from CNX an amount of money equal to the Lease royalties converted by CNX.

87.     Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

**COUNT IV**

**NEGLIGENCE: VOLUNTARY UNDERTAKING**

88.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

89.     CNX voluntarily undertook to submit applications to the Board for the creation of Force-Pooled CBM Units and voluntarily undertook to create Voluntary CBM Units, and CNX thereby also voluntarily undertook the tasks of identifying the persons and entities owning an interest in the proposed units and identifying any conflicting CBM ownership claims therein. CNX recognized, or should have recognized, that the proper identification of owners and ownership interests was necessary for the protection of those persons and entities actually owning interests in the CBM that was going to be produced from the CBM Unit.  As a matter of law, CNX's undertaking imposed upon CNX a duty to exercise reasonable care in the discharge of its undertaking.

90.     On March 5, 2004, the Virginia Supreme Court issued its ruling in *Ratliff* and thereby established that, as between the owner of the gas estate on the one hand, and the owner of the coal estate on the other hand, CBM is owned by the owner of the gas estate. After March 5, 2004, and notwithstanding the Supreme Court's decision in *Ratliff*, CNX continued to make applications to the Board for the establishment of Force-Pooled CBM Units and continued to establish Voluntary CBM Units, and in connection therewith failed to exercise reasonable care with regard to its identification of the persons and entities owning interests in the CBM.

91.     Among other things, CNX improperly ignored the holding of *Ratliff* and §45.1-361.21:1, improperly asserted that conflicting CBM ownership claims existed between gas estate owners and coal estate owners; improperly procured the Board's entry of pooling orders which adopted (false) assertions of conflicting CBM ownership claims as between gas estate owners and coal estate owners; and improperly caused royalty payments owed to the true CBM owners -- the gas estate owners -- to be held in the Board's escrow account or to be held by CNX "in suspense," thereby depriving Plaintiff and the Class Members of the Lease royalties to which they were entitled. Further, after the Virginia Supreme Court's March 5, 2004, opinion in *Ratliff*, CNX, as the operator of CBM Units established prior to March 5, 2004, should have filed, but failed to file, supplemental and corrected ownership and revenue distribution schedules with the Board in regard to those Force-Pooled CBM Units that had been established prior to March 5, 2004; and should have corrected its internal ownership and revenue distribution schedules in regard to those Voluntary CBM Units that had been established prior to March 5, 2004. CNX should have withdrawn its prior ownership and revenue distribution schedules in which gas estate owners and coal estate owners had been categorized incorrectly as "conflicting claimants," and should have prepared and/or submitted amended ownership and revenue distribution

schedules reflecting, consistent with *Ratliff*, that the gas estate owners -- not the coal estate owners -- were the true CBM owners. CNX should have also taken the foregoing actions after the Virginia General Assembly's enactment of §45.1-361.21:1 on April 13, 2010. CNX could and should have thereby caused Lease royalties attributable to past production to be released to the gas estate owners, including Plaintiff and the Class Members, and/or caused Lease royalties attributable to future production to be paid to the gas estate owners, including Plaintiff and the Class Members, instead of being placed into the Board's escrow account and/or held by CNX "in suspense."

92.     Such acts and omissions constitute a failure by CNX to exercise reasonable care in the performance of its undertakings, and constitute actionable negligence. Further, CNX's acts and omissions in this regard constitute gross negligence and willful, wanton misconduct.

93.     Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT V

## NEGLIGENCE: DUTIES AS UNIT OPERATOR

94.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

95.     CNX owed Plaintiff and the Class Members certain obligations resulting from duties that are implied and imposed by law on lessees and/or on operators of force-pooled or voluntary units, including the duty to act as a reasonably prudent operator and the duty to market.

96.     The above-described conduct by CNX constitutes violations and breaches of CNX's duty to act as a reasonably prudent operator and CNX's duty to market.

97.     Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT VI

## BREACH OF FIDUCIARY DUTIES

98.     Plaintiff restates and incorporates herein by reference all of the allegations contained in the above-numbered paragraphs.

99.     Fiduciary duties and responsibilities were owed by CNX to Plaintiff and the Class Members by virtue of (a) CNX's status as the lessee under the Leases and/or as the operator of CBM Units created voluntarily by CNX or through compulsory/forced pooling; (b) CNX's control over and handling, as unit operator, of CBM production and sales proceeds for the benefit of persons owning interests in the CBM Units operated by CNX, including Plaintiff and the Class Members; and/or (c) CNX's undertakings to act as agent and/or joint venturer for, or for the benefit of, other interest owners in the CBM Units operated by CNX, including Plaintiff and the Class Members, in regard to the production, marketing and sale of CBM produced from the CBM Units and in regard to the accounting and revenue distribution functions related thereto. By virtue of such fiduciary duties and responsibilities, CNX had an affirmative duty to correctly identify the interest owners in the CBM Unit; calculate and pay the true and correct amount of monies due to the interest owners, including Plaintiff and the Class Members; account for all of the CBM produced and sold by CNX; and fully and accurately report and disclose all material information relating to CNX's calculation of its payments.

100.     CNX's acts and omissions as above-described constitute violations and breaches of the fiduciary duties owed by CNX to Plaintiff and the Class Members.

101.    Plaintiff and the Class Members have been damaged as a proximate result thereof and are entitled to recover their actual damages from CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## COUNT VII

## UNJUST ENRICHMENT

102.    Plaintiff restates and incorporates herein by reference all the allegations contained in the above-numbered paragraphs.

103.    Benefits attributable to Plaintiff's and the Class Members' CBM ownership interests, including CBM production volumes, sales proceeds, attendant tax credits, Lease and/or other benefits, were conferred on CNX by Plaintiff and the Class Members. CNX knew of such benefits and should reasonably have expected to pay Plaintiff and the Class Members for same. CNX accepted and retained such benefits without paying Plaintiff and the Class Members for the value of the benefits, and accepted and retained such benefits under circumstances that render it inequitable for CNX to retain the benefits without paying Plaintiff and the Class Members for the value of same.

104.    Plaintiff and the Class Members are entitled to recover the value of the benefits attributable to Plaintiff's and the Class Members' ownership interests that were accepted and retained improperly by CNX, statutory, equitable, or other prejudgment interest at the maximum lawful rate, punitive damages, and any and all other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands as follows on behalf of herself and the Class:

1.    That a class be certified by the Court as soon as practicable, and that this action proceed as a class action with Plaintiff serving as Class Representative for the Class and with counsel for Plaintiff serving as Class Counsel;

2.    That the Court enter a judgment declaring the respective rights and obligations of the parties as described and requested above;

3.    That the Court award injunctive relief requiring CNX to properly account to Plaintiff and the Class Members as described and requested above;

4.    That Plaintiff and the members of the Class recover full compensatory damages from CNX in respect to the claims asserted against CNX, and that CNX disgorge and pay over to Plaintiff and the members of the Class all of CNX's ill-gotten gains as described and requested above;

5.    That Plaintiff and the members of the Class recover punitive damages against CNX as determined by a jury;

6.    That Plaintiff and the Class Members recover from CNX pre-judgment, post-judgment, and equitable interest on all amounts awarded hereunder;

7.    That this Honorable Court grant Plaintiff and the Class Members all additional relief as may be just and proper and to which the Plaintiff and the members of the Class may be entitled; and

8.    That Plaintiff and the Class Members be given a trial by jury.

Dated:  June 15, 2012

Respectfully submitted,

DORIS BETTY ADDISON, PLAINTIFF

  /s/  *Don Barrett*
Don Barrett
Brian Herrington
Katherine B. Riley
David M. McMullan, Jr.
Barrett Law Group, P.A.
404 Court Square North
P.O. Drawer 927
Lexington, MS 39095
Telephone:  (662) 834-2488
Facsimile:  (662) 834-2628
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
kbriley@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

David S. Stellings
Steven E. Fineman
Daniel Seltz
Lieff, Cabraser, Heimann
  & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
dstellings@lchb.com
sfineman@lchb.com
dseltz@lchb.com

Larry D. Moffett
Daniel Coker Horton & Bell, P.A.
265 North Lamar Blvd., Suite R
P. O. Box 1396
Oxford, MS 38655
Telephone: (662) 232-8979
Facsimile:  (662) 232-8940
lmoffett@danielcoker.com

Elizabeth J. Cabraser
Lieff Cabraser Heimann
  & Bernstein, LLP
275 Battery Street
San Francisco, CA 94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
ecabraser@lchb.com

Elizabeth A. Alexander
Lieff Cabraser Heimann
  & Bernstein, LLP
One Nashville Place
150 Fourth Avenue North
Suite 1650
Nashville, TN 37219
Telephone:  (615) 313-9000
Facsimile: (615) 313-9965
ealexander@lchb.com

Richard R. Barrett
Law Offices of Richard R. Barrett, PLLC
1223 Jackson Avenue, Suite 203
Oxford, MS 38655
Telephone: (662) 307-7000
rrb@rrblawfirm.net

Peter G. Glubiak (VSB 31271)
Glubiak Law Office

19840 King William Rd.
King William, VA 23086
Telephone:  (804) 769-1616
Facsimile:  (804) 769-1897
glubiaklaw@aol.com

Jackson S. White, Jr. (VSB 03677)
The White Law Office
P. O. Box 286
Abingdon, VA 24212
Telephone: (276) 619-3831
Facsimile: (815) 550-2930
jackwhite@whitelawoffice.com

Jennifer L. Shaver (VSB 79047)
Ellis Professional Building, Suite A
211 West Main Street
Abingdon, VA  24210
Telephone: (276) 525-1103
Facsimile: (276) 525-1112
 jshaver@bvunet.net

Charles F. Barrett
Attorney at Law
6518 Highway 100, Suite 210
Nashville TN 37205
Telephone: (615) 515-3393
Facsimile: (615) 515-3395
charles@cfbfirm.com

## CERTIFICATE OF SERVICE

The undersigned counsel does hereby certify that he has this day served a true and correct copy of the above and foregoing upon all counsel of record via ECF notification.

This the 15th day of  June, 2012.

/s/  *Don Barrett*
Don Barrett