# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| ROBERT ADAIR, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EQT PRODUCTION COMPANY, )<br>)<br>Defendant. ) | Case No. 1:10CV00037 |

_____

| | |
|---|---|
| EVA MAE ADKINS, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EQT PRODUCTION COMPANY, )<br>)<br>Defendant. ) | Case No. 1:10CV00041 |

_____

| | |
|---|---|
| **JULIE A. KISER, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,** | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:11CV00031 |
| **EQT PRODUCTION COMPANY, ET AL.,** | )<br>)<br>) |
| Defendants. | ) |

___

| | |
|---|---|
| **JEFFERY CARLOS HALE, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,** | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:10CV00059 |
| **CNX GAS COMPANY LLC, ET AL.,** | )<br>)<br>) |
| Defendants. | ) |

___

| | |
|---|---|
| **DORIS BETTY ADDISON, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,** | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:10CV00065 |
| **CNX GAS COMPANY LLC, ET AL.,** | )<br>)<br>) |
| Defendants. | ) |

# OPINION AND ORDER

*David S. Stellings, Lieff Cabraser Heimann & Bernstein, New York, New York, for Plaintiffs; Wade W. Massie, PennStuart, Abingdon, Virginia, for EQT Production Company; Jonathan T. Blank, McGuireWoods LLP, Charlottesville, Virginia, for CNX Gas Company LLC; Kathy L. Wright, Gentry Locke Rakes & Moore, LLP, Roanoke, Virginia, for Torch Oil and Gas Company; Blair M. Gardner, Jackson Kelly PLLC, Charleston, West Virginia, for Buckhorn Coal Company, Commonwealth Coal Corporation, and Harrison-Wyatt, LLC.*

In these related cases, the court of appeals vacated this court's earlier class certifications and remanded for "a more rigorous analysis as to whether the requirements for class certification have been satisfied." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 352 (4th Cir. 2014). The parties now dispute the proper method of conducting that analysis and in particular the appropriateness and scope of any further discovery on class certification by the plaintiffs. I have received submissions from the parties in this regard and herein will set forth my decisions on these issues.

In order to adequately explain the reasons for my decisions, it is necessary to first review the specific concerns of the court of appeals and its directions to me, as well as the lengthy procedural history of these cases.

I.

The five cases involve two coalbed methane ("CBM") producers, EQT Production Company ("EQT") and CNX Gas Company LLC ("CNX"), with the *Adair, Adkins,* and *Kiser* cases concerning EQT and the *Hale* and *Addison* cases involving CNX. The earliest case — *Adair* — was filed in this court on June 15,

-3-

2010, and the other four following thereafter, with the last — *Kiser* — being filed on April 20, 2011. Numerous hearings have been held in the five cases, and dozens of orders and opinions entered, either by me or U.S. Magistrate Judge Pamela Meade Sargent, covering a wide range of procedural and substantive issues.[1] After substantial briefing and argument, I certified classes in all of the cases on September 30, 2013. The defendants then sought interlocutory appeals of the certifications pursuant to Federal Rule of Civil Procedure 23(f). After briefing and argument, the court of appeals granted the appeals and remanded the cases by opinion dated August 19, 2014.

In its opinion, the court of appeals summarized the classes certified by this court as follows:

> Four of the five classes — *Adair, Addison, Hale*, and *Kiser* — consist of persons who have never received CBM royalties for a CBM interest they claim to own. As defined by the district court, the classes include (1) all persons or their successors, (2) whom EQT or CNX have identified as being the owners of the gas estate in a tract underlying a CBM drilling unit, (3) whose interest in the CBM is "in

---

[1] *See, e.g., Adair v. EQT Prod. Co.*, 294 F.R.D. 1 (W.D. Va. 2013); *Adair v. EQT Prod. Co.*, Nos. 1:10-cv-00037, 1:10-cv-00041, 1:11-cv-00031, 1:10-cv-00059, 1:10-cv-00065, 2013 WL 5429882 (W.D. Va. Sept. 5, 2013); *Adair v. EQT Prod. Co.*, 285 F.R.D. 376 (W.D. Va. 2012); *Adair v. EQT Prod. Co.*, No. 1:10CV00037, 2012 WL 4127611 (W.D. Va. Aug. 18, 2012); *Adair v. EQT Prod. Co.*, Nos. 1:10CV00037, 1:10CV00041, 2012 WL 2526982 (W.D. Va. June 29, 2012); *Adair v. EQT Prod. Co.*, No. 1:10CV00037, 2012 WL 4458231 (W.D. Va. June 28, 2012); *Adair v. EQT Prod. Co.*, No. 1:10cv00037, 2012 WL 1067641 (W.D. Va. Mar. 28, 2012); *Adkins v. EQT Prod. Co.*, No. 1:11CV00031, 2011 WL 6178438 (W.D. Va. Dec. 13, 2011); *Adair v. EQT Prod. Co.*, No. 1:10CV00037, 2011 WL 4527647 (W.D. Va. Sept. 28, 2011); *Adair v. EQT Prod. Co.*, No. 1:10cv00037, 2011 WL 3273480 (W.D. Va. July 29, 2011) *vacated*, No. 1:10CV00037, 2011 WL 4501048 (W.D. Va. Sept. 28, 2011); *Addison v. CNX Gas Co., LLC*, No. 1:10cv00065, 2011 WL 4553090 (W.D. Va. May 13, 2011); *Adair v. EQT Prod. Co.*, No. 1:10cv00037, 2011 WL 4527433 (W.D. Va. Jan. 21, 2011).

-4-

conflict" because a different person owns the coal estate in the same tract.

The ownership classes can be further broken down. In two cases (the "force pooled" classes) — *Adair* and *Hale* — the plaintiffs' purported CBM interests have been force pooled by a [Virginia Gas and Oil] Board order.

In the other two ownership cases (the "voluntary lease" classes) — *Kiser* and *Addison* — the defendants entered voluntary lease arrangements with the putative class members. Nonetheless, the class members' CBM interests have been subject to pooling, and their royalties have either been paid into Board escrow accounts or internally withheld by EQT and CNX.

The primary object of the ownership classes is to obtain the release of escrowed or suspended royalties. To that end, they seek a declaratory judgment that: (1) the ownership conflict EQT and CNX identified between gas estate owners and coal estate owners is "illusory"; (2) as gas estate owners, the class members are entitled to the CBM royalties withheld; and (3) any royalties held in escrow or internally suspended by EQT and CNX as a result of the "illusory" ownership conflict must be paid to the class members.

. . . .

The fifth class — *Adkins* — is unique, as it consists of persons whose CBM ownership interest is not disputed. Instead, the putative class includes persons who have received a royalty from EQT at some point since January 1, 1995. The *Adkins* plaintiffs allege that EQT has systematically underpaid CBM royalties. The four other classes make similar claims against the defendants. Each of the classes seek a complete accounting of the royalties EQT and CNX have remitted to class members, paid into escrow, or internally suspended.

764 F.3d at 355 (footnotes omitted).

The court of appeals designated numerous specific issues requiring more rigorous analysis, as follows.

-5-

Case 1:10-cv-00065-JPJ-PMS   Document 363   Filed 02/06/15   Page 5 of 17   Pageid#: 7395

A. Ascertainability.

Rule 23 implicitly requires that the members of a class be "'readily identifiable.'" *Id.* at 358 (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)). The court of appeals directed that upon remand this court reconsider this issue, in light of the fact that the classes as defined contained gas estate owners who obtained their interest after the original ownership schedules were prepared by the gas producers and filed with the Virginia Gas and Oil Board. *Id.* at 359. The court of appeals specifically held that in the course of its reconsideration, this court must (1) "determine the number of potential class members who have obtained their interest in the gas estate after the defendants first prepared the ownership schedule"; (2) "give greater consideration to the administrative challenge it will face when using land records to determine current ownership, and assess whether any trial management tools are available to ease this process"; (3) "determine whether it is possible to adjust the class definitions" in order to avoid such administrative challenges; and (4) consider "whether it is possible to define the classes without creating a fail-safe class." *Id.* at 360 & n.9.[2]

B. Commonality.

Rule 23 requires a showing that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In relation to this commonality issue, the

---

[2] A fail-safe class "'is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'" *Id.* at 360 n.9 (quoting *Messner v. Northshore Univ. HealthSys.,* 669 F.3d 802, 825 (7th Cir. 2012)).

-6-

court of appeals directed that this court must interpret and decide state decisional and statutory law regarding CBM ownership, in order to determine whether the question of royalty entitlements can be resolved on a classwide basis. 764 F.3d at 361. In this regard, this court was instructed to consider "the number of deed variations" and "materiality of the discrepant language," as relevant to the class definition. *Id.* at 363. The court also held that in determining CBM ownership, the court must allow identified coal estate owners "to assert their potential interests." *Id.* at 362 n.11.

## C. Predominance.

In regard to the all of the plaintiffs' claims, and in particular the claims involving alleged underpayment of royalties, the court of appeals found that this court failed "to ensure that the class members' common issues would predominate over individual ones" by considering the extent to which the common issues bear "on the central issue in the litigation." *Id.* at 366.

As to the underpayment of royalties claims, the court of appeals also directed that this court consider the impact of variations in the defendants' royalty payment practices, variations in the voluntary lease terms among the class members in the *Kiser*, *Adkins*, and *Addison* cases, and the possibility of alternate class or subclass definitions, in order to resolve the commonality and predominance issues. *Id.* at 367-69.

In connection with the predominance requirement, the court of appeals further directed this court in the *Adkins* case to consider course of performance evidence relating to past receipts of royalties by class members, to consider the import of variations among the plaintiffs' claims, and to re-evaluate in each case the possible statute of limitations defenses. *Id.* at 369-70.

### D. Superiority.

The court of appeals also directed this court to reconsider the requirement — where applicable — that a class proceeding "is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. at 370 (quoting Fed. R. Civ. P. 23(b)(3)). In particular, this court was directed to consider "the dominance of state law issues" and "what state-law mechanisms may be available to resolve the underpayment claims as an alternative to a class action." 764 F.3d at 371. The court also found that it would be "proper" for this court to consider in determining superiority the defendants' "efforts to resolve and pay undisputed claims." *Id.*

### E. Other Prerequisites.

Finally, the court of appeals provided that this court could reconsider its judgment as to other Rule 23 class requirements not addressed by the court of appeal in its opinion. *Id.* at 370 n.25.

### II.

After the court of appeals' remand, I requested the parties to submit their positions on how the cases should next proceed. I also made clear my intention to

-8-

Case 1:10-cv-00065-JPJ-PMS   Document 363   Filed 02/06/15   Page 8 of 17   Pageid#: 7398

moot all pending motions without prejudice, with the understanding that the motions could later be filed anew.

In response to the court's request, the plaintiffs stated their intention to file renewed motions for class certification. They requested time to reanalyze information previously provided to them by the defendants, as well as the opportunity to identify further information for discovery and to remedy deficiencies in discovery already produced by the defendants and third parties. In response, the defendants objected to any further discovery and requested expeditious resolution of the cases in light of the court of appeals' opinion.

After considering these submissions, I directed that the plaintiffs explain "the specific subject matter and method of any further discovery requested as to class certification, taking into account (1) the importance of any such discovery and (2) whether its burden and expense on the opposing party outweighs its likely benefits." (Order, Oct. 14, 2014.)

Thereafter, the plaintiffs filed a submission concerning additional pre-certification discovery. The plaintiffs requested the following discovery from defendants CNX and EQT: (1) the underlying severance or other deeds used to prepare the title opinions for pooling order applications that determined that the class members should be listed as conflicting claimants to the CBM with coal owners or others; (2) production of a corporate designee to speak for each defendant concerning the review, categorization, and use of severance and other

-9-

deeds to prepare pooling order applications and internal suspense accounts for voluntary leases; and (3) production of a corporate witness to describe each defendant's practices for updating addresses and ownership status for individuals whose royalties are being held in escrow or in internal suspense accounts. Further, the plaintiffs requested that CNX correct a number of alleged document production deficiencies identified in earlier discovery, concerning: (1) production of a privilege log; (2) documents showing CNX's calculation of gathering rates for certain portions of the class period; (3) documentation of CNX's payment histories, particularly the dates of payment; (4) several hundred boxes of unknown documents; and (5) documents from the prior *Levisa* case. Finally, the plaintiffs requested that the coal owner intervenors produce documents concerning the terms of royalty payment agreements with CNX, any deeds not yet produced regarding the coal owners' claimed entitlement to gas royalties, and any internal communications regarding the coal owners' claims in this case. The plaintiffs contend that this discovery is necessary in order to address ascertainability questions, variances in severance deed terms, predominance issues, and questions of bad faith. The plaintiffs assert that the proposed discovery would pose minimal burdens on the defendants.

    In response to the plaintiffs' submission, the defendants again objected to further discovery. CNX filed a Motion for Protective Order, contending that the burden and expense of the plaintiffs' requested discovery would be unjustifiable

-10-

Case 1:10-cv-00065-JPJ-PMS   Document 363   Filed 02/06/15   Page 10 of 17   Pageid#: 7400

given the expense CNX had already incurred to comply with the plaintiffs' discovery requests. Further, CNX argues that the requested discovery is not important because it fails to address some of the main obstacles to class certification identified by the court of appeals — in particular, questions regarding the ascertainability of the class. For its part, EQT objects to further discovery on the grounds that the requested discovery would be duplicative, and that it would fail to address the court of appeals' main concerns regarding class certification.

### III.

Under the rules of civil procedure, any nonprivileged matter that is relevant to the claim is discoverable. Fed. R. Civ. P. 26(b)(1). However, "the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had." *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). Whether on its own initiative or in response to a motion for a protective order, a district court must

> limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> >
> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

>           (iii) the burden or expense of the proposed
> discovery outweighs its likely benefit."

Fed. R. Civ. P. 26(b)(2)(C). Thus, the rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 523 (D. Md. 2010); *see also In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, Nos. 2:10-cv-01224, 2:11-cv-00012, 2:11-cv-00114, 2:11-cv-00195, 2013 WL 1722998, at *2 (S.D.W. Va. Apr. 22, 2013).[3]

Based on these criteria, I find that further discovery in this case would be inappropriate prior to an evidentiary hearing on class certification. The plaintiffs have not sufficiently explained how their proposed discovery would advance the case in light of the court of appeals' opinion and the considerable discovery already conducted, and the defendants have advanced compelling arguments that the burden and expense of further discovery would not be justifiable.

---

[3] In this regard, the Judicial Conference of the United States has proposed an amendment to Rule 26(b)(1), governing the scope of discovery, to state the following: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expensive of the proposed discovery outweighs its likely benefit." *Report of the Proceedings of the Jud. Conf. of the U.S.*, Rules App. B-30 at 10 (Sept. 16, 2014.) Although the amendment is not yet in force, the proposed language provides guidance as to the scope of discovery and emphasizes that discovery must be "proportional to the needs of the case." *Id.*

Case 1:10-cv-00065-JPJ-PMS   Document 363   Filed 02/06/15   Page 12 of 17   Pageid#: 7402

As an initial matter, much of the discovery requested by the plaintiffs is duplicative and cumulative of discovery already received. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (stating that court must limit unreasonably duplicative or cumulative discovery). By their own admission, for example, the plaintiffs have already obtained a large number of severance deeds from the defendants. Any missing deeds are readily obtainable from local land records. The plaintiffs have not explained why the defendants should have the burden of producing publicly available deeds. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (providing that court may consider whether discovery is available from more convenient, less burdensome, or less expensive sources). Further, the defendants have already provided corporate officials to testify as to EQT's and CNX's practices regarding the use of severance deeds in preparing title opinions, and for updating the ownership status for properties from which royalties are being held in escrow or internal suspension accounts. The plaintiffs have not explained how further depositions on these topics would be beneficial, much less justified the burden and expense further depositions would place on the defendants. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii) (providing that party must obtain leave of court, consistent with limitations in Rule 26(b)(2), to depose witness that has already been deposed).

As to the remainder of the requested discovery, any conceivable benefits are speculative compared to the certain burden and expense that would be imposed on the defendants or third parties, including the coal owners. *See* Fed. R. Civ. P.

-13-

Case 1:10-cv-00065-JPJ-PMS   Document 363   Filed 02/06/15   Page 13 of 17   Pageid#: 7403

26(b)(2)(C)(iii). In particular, the benefit of the proposed discovery is questionable given that the requested documents and depositions would do little to address the obstacles to class certification identified in the court of appeals' opinion.

Foremost, the proposed discovery would not address issues pertaining to the ascertainability of the class, which are central to the litigation. The court of appeals advised that "[i]f class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." 764 F.3d at 358 (internal quotation marks and citation omitted). The court concluded that "the proposed classes raise serious ascertainability issues because they are defined to include both former and current gas estate owners." *Id*. at 359. Since ownership of the gas estate "has not been static" since the defendants first prepared the ownership schedules that were submitted to the Virginia Gas and Oil Board in support of pooling applications, these schedules "cannot aid a court in ascertaining those class members who obtained their interest in the gas estate after the schedules were first prepared." *Id.* The court also noted that "numerous heirship, intestacy, and title-defect issues plague many of the potential class members' claims to the gas estate." *Id.* Finally, the court cautioned that attempting to resolve ownership issues through local land records could result in "a complicated and individualized process" inimical to a class action. *Id.* The plaintiffs' requested discovery is not responsive to these "significant administrative barrier[s]" to ascertainability identified by the court of appeals. *Id.*

Nor does the plaintiffs' requested discovery bear on other significant issues identified by the court of appeals with regard to the disputed ownership cases, *Adair*, *Addison, Hale,* and *Kiser*. These issues include how a class action might be structured to afford coal estate owners an adequate forum to assert their interests, *id.* at 362 n.11, whether it is possible to define a class without creating a "fail-safe class," *id.* at 360 n.9, the superiority of a class action to state-law mechanisms, *id.* at 371, or other Rule 23(a) and (b) prerequisites to class certification, *id.* at 363 n.15.

The plaintiffs' discovery requests are even more deficient with regard to the classes alleging royalty underpayments, particularly concerning predominance and commonality issues. The court of appeals directed this court to address numerous issues, including variations in the plaintiffs' claims, *id.* at 367 n.19, variations in lease provisions, *id.* at 367, course of performance evidence, *id.* at 369, variations in the defendants' royalty payment practices, *id.* at 366, and variations in the plaintiffs' claims with regard to statutes of limitations issues, *id.* at 370, in order to determine whether questions common to the class predominate over individualized issues. The plaintiffs' proposed discovery addresses none of these issues.

Despite the plaintiffs' insistence that the burden of further discovery would be minimal, it is clear that the plaintiffs' requests involve numerous documents and nontrivial deposition time. Given that the plaintiffs have already received voluminous discovery over the course of years, and that the potential benefits of

such discovery are tenuous for the reasons described above, I must conclude that the burden and expense of any further discovery outweighs its likely benefits.

Moreover, while the court of appeals expressed its sympathy for the plight of "numerous CBM owners in Virginia who haven't received a penny of CBM royalties and others who may have gotten less than their due," 764 F.3d at 371, the fact is that the plaintiffs' cases are more problematical now in light of that court's decision. I must also consider that reality in determining the appropriateness of further discovery.

For these reasons, it is **ORDERED** as follows:

1. The Motion for Protective Order in Cases Nos. 1:10CV00059 (ECF No. 438) and 1:10CV00065 (ECF No. 358) is GRANTED;

2. No further discovery is permitted in any of these cases pending the determination of class certification;

3. The court intends to schedule a hearing on class certification to be held jointly in all of these cases, at which the parties may present evidence and argument;

4. Prior to such hearing, the court will require the plaintiffs to file their proposed class definitions to be considered by the court at the hearing, together with disclosures of expert opinion testimony and other evidence to be presented at the hearing, in accord with Federal Rule of Civil Procedure 26(a)(2) and (3). The defendants will be required to make reciprocal disclosures prior to the hearing; and

5. The court will promptly arrange a scheduling conference with counsel in order to determine the hearing dates and other deadlines prior thereto.

ENTER: February 6, 2015

/s/ James P. Jones
United States District Judge

-17-

Case 1:10-cv-00065-JPJ-PMS   Document 363   Filed 02/06/15   Page 17 of 17   Pageid#: 7407